Argued February 11, affirmed July 9, 1970

WAIBEL, *Respondent, v.* STATE
COMPENSATION DEPARTMENT,
*Appellant.*
471 P2d 826

*James P. Cronan, Jr.*, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Wallace Carpenter, Chief Counsel and Assistant Attorney General, Salem.

*Wesley A. Franklin,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C. J.

The State Compensation Department appeals from a circuit court finding that the now-deceased workman

Joe Waibel's total disability immediately preceding his death resulted from an industrial accident and was therefore compensable. Waibel's period of total disability was due to Hodgkin's disease which pre-existed his industrial accident.

There are two questions which must be answered in the affirmative if the ruling of the court below is to be affirmed.

■■ One is: If the happening of an accident delays the diagnosis of a pre-existing disease with the result that the disease is not treated as promptly as it otherwise would have been, is the injured workman entitled to industrial accident compensation for the physical consequences to him of the delay in treatment for the disease?

■ Counsel have not cited to us any Oregon cases precisely on point. In any event, there are Oregon cases and other authority which lead us to answer this question in favor of compensation. Numerous opinions of the Oregon Supreme Court over the 50-plus years during which a workman's compensation law has been in effect hold that the law is to be liberally construed in favor of the workman. In one opinion the court went to the extreme of saying:

> "This court has uniformly held that the provisions of the Workmen's Compensation Law should be interpreted liberally in favor of the workman, and particularly should this be so when we are confronted with a 'borderline case'. In the interests of justice, and to carry out the humane purposes of the Compensation Law, *all reasonable doubts should be resolved in favor of the workman.*" *Livingston v. State Ind. Acc. Com.*, 200 Or 468, 472, 266 P2d 684 (1954). (Emphasis supplied.)

■ Numerous Oregon cases hold that aggravation of pre-existing conditions is compensable and these opinions do not restrict aggravation to "direct" aggravation. For example, see *Armstrong v. State Ind. Acc. Comm.*, 146 Or 569, 31 P2d 186 (1934).

■ ■ Larson, Workmen's Compensation Law 192.59, § 13.00 (1964), states the general rule to be:

"When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

Cases in other jurisdictions show us that weight of authority follows the principle that indirect as well as direct aggravation is compensable if it is a natural consequence of the injury. We agree.

*Calbeck v. Strachan Shipping Company*, 306 F2d 693 (5th Cir 1962), 372 US 954, 83 S Ct 950, *cert denied* 9 L Ed 2d 978 (1963), was brought under the Longshoremen's and Harbor Worker's Compensation Act. Although compensation was denied for insufficiency of evidence, the court said:

"In the Deputy Commissioner's order there is included in his findings of fact the following statement:

" 'The employee's death was the result of the natural and unavoidable progression of the injury and the conditions and the ailments that were proximately caused, aggravated or accelerated by the employment. The injury and death arose out of and in the course of the employment. The chain of causation proceeded in a logical and orderly fashion and was direct and continuous from the day of the injury to and including the day of death.'

The uncontroverted fact is that Gee had cancer of the lung which had probably spread to the pleural cavity prior to March 5, 1957, and by that date his condition had progressed to the incurable stage. There is nothing more than surmise and conjecture, there is no substantial evidence, to support a finding that the fertilizer accelerated the growth of the cancer or that the cancerous condition was aggravated by it. If the judgment of the district court is to be reversed and the award of the Deputy Commissioner is to be reinstated, it must be as a result of a determination that substantial evidence shows that the fertilizer incident masked *the cancer and so delayed its diagnosis that treatments were not given which probably would have prolonged Gee's life for a brief period* of time \* \* \*." (Emphasis supplied.)

The New York Court of Appeals, as may be seen from its decisions which we discuss below, has gone farther than did the court in *Calbeck*. We cite the New York cases as authority for the principle involved and by citing them do not mean that we would necessarily reach the same results as did the New York court on identical fact situations.

In *Davis v. Anderson*, 271 NY 643, 3 NE2d 463 (1936), the claimant had suffered a hernia in the course of his employment. Prior to surgery for the hernia the claimant authorized the surgeon to correct any other condition he might find during the operation. In the performance of the operation the surgeon discovered a diseased appendix which he removed. Death ensued due to a hemorrhage of the appendix artery. The court held that the death was causally connected to the accident which caused the hernia and was compensable.

In *Vanecek v. Greeley Square Building Corp. et al*, 278 App Div 869, 104 NYS2d 214 (1951), claimant

suffered a scalp laceration. The laceration was sutured and the employe complained of headaches and dizziness. On a possibility of post-traumatic bleeding the surgeon made two exploratory operations, the second of which revealed a pre-existing tumor. The claimant died as a result of the second operation. The death was deemed compensable.

The remaining question here is whether or not Waibel's injury masked the Hodgkin's disease symptoms, delaying treatment for the Hodgkin's disease and thus hastening the advent of his total disability. Our review of the record leads us to the conclusion that the answer to this question is also, "yes."

Waibel had a history of Hodgkin's disease preceding the accident by 10 years. He was treated at the University of Oregon Medical School for this disease from 1963 until his death.

On August 4, 1966, a jack with which Waibel was working buckled causing a large timber to strike him, driving him back into a log so that he struck his back and was rendered unconscious. What area of claimant's back was struck is disputed. A brief medical report made by a physician on the day of the accident diagnosed his condition as "Concussion. Cervical strain;" however, a medical report introduced into evidence by the State Compensation Department states under the caption, History:

> "He improved and returned to work after a temporary total disability period, and he says that he worked along such as his symptoms would allow, working on a part-time basis. He had recurrent pain referable to his low back that has persisted intermittently. He has had low back pain ever since his accident."

Immediately after his accident he was hospitalized under the care of a general practitioner who treated him for back sprain for a couple of days and then released him.

In November of 1966, the general practitioner referred him to an orthopedist. The orthopedist testified at the hearing that the claimant had been wearing a back brace and taking pain medication.

It is obvious from the record that the doctors and the claimant thought that the symptoms and the treatment for them were the outgrowth of the August accident. The orthopedist recommended that the claimant continue to wear the brace. He saw the claimant on several occasions thereafter and treated him orthopedically.

On December 13, 1966, Waibel told the orthopedist that his back was improved but complained of a sensation of feeling as though he had "seaweed hanging on his toes."

On March 7, 1967, Waibel was taken to a McMinnville hospital. He was staggering and complaining of no feeling in his toes or feet. He was placed in traction under the care of Dr. Hazel. His condition deteriorated and on March 11, 1967, he was taken to the University of Oregon Medical School where an operative procedure which revealed a spinal tumor was carried out on his back because of his inability to use his legs. He was thereafter confined to a wheelchair until his death.

Two physicians who are specialists in the field of Hodgkin's disease testified; one for the State Compensation Department, one for the claimant. Both testified that Hodgkin's disease produces tumors; that such tumors usually produce neurological symptoms and that timely emergency treatment can delay, if not prevent, the disastrous consequences suffered by the

claimant. The specialist who testified on behalf of the claimant said that the symptoms reported to and observed by the orthopedist, starting with the "seaweed hanging on the toes" incident of December 1966, would have put him on notice of the possibility of a spinal tumor caused by the Hodgkin's disease. He further testified that with proper treatment on an emergency basis the tumor could have been stopped and possibly permanently cured. He testified that even a few hours' acceleration in treatment could have made a significant difference.

The expert medical witness for the defense did not dispute the material aspects of this testimony.

The orthopedist testified that in retrospect he might have made a different diagnosis and that the treatment he gave was at best of no value so far as the Hodgkin's disease was concerned.

■ The record taken by its four corners indicates that the accident of August 4, 1966, and the symptoms which immediately followed it led the claimant and his attending physicians into believing that the symptoms he experienced from that time until March 11, 1967, were traumatic rather than the product of Hodgkin's disease. It seems highly probable that if the trauma had not "masked" the Hodgkin's disease symptoms Waibel would have received treatment for the disease at an earlier date and that such treatment would have at least forestalled his total disability.

By so finding we do not in any way infer malpractice on the part of any attending physician. We need not be medical experts to recognize that medical science has not yet reached perfection and that even the most able diagnostician cannot be infallible.

Affirmed.