Argued September 27, 1971, affirmed in part, reversed in part
January 14, 1972

## GROSSEN, *Respondent, v.* GRIFFEY & LAIRD LOGGING COMPANY (No. 30747), *Appellant.*

492 P2d 820

Philip A. Mongrain, Portland, for appellant.

George T. Gant and McNutt, Gant, Ormsbee & Gardner, Coos Bay, for respondent.

Before SCHWAB, Chief Judge, and FOLEY and LANGTRY, Judges.

FOLEY, J.

Claimant in this workmen's compensation case was injured in an industrial accident on May 12, 1969,

when a log rolled over him causing serious injury to his back. The Closing and Evaluation Division awarded him 64 degrees for unscheduled disability to the low back and 108 degrees for permanent loss of wage earning capacity, for a total of 172 degrees for unscheduled disability. On appeal by the employer the hearing officer affirmed the administrative determination. On Board review the Workmen's Compensation Board disallowed the 108 degrees reflecting diminished earning capacity and affirmed the 64 degrees as the full extent of claimant's disability. Claimant appealed to the circuit court, which reinstated the hearing officer's award of 172 degrees for unscheduled disability. The circuit court also awarded an attorney's fee of 25 per cent of the 108 degree increase over the Board's order but not to exceed $1,500, to be paid by the employer. Defendant-employer appeals from the circuit court judgment, challenging, first, the amount of the disability award and, second, the circuit court's award of attorney's fees to be paid by the employer.

With reference to the disability award, the Closing and Evaluation Division separated the awards and allowed 64 degrees for unscheduled disability to the low back and 108 degrees for "permanent loss of wage earning capacity." This separation of awards was pursuant to Workmen's Compensation Board Administrative Order No. 1-1970, dated January 23, 1970, based, it recites, on *Ryf v. Hoffman Construction Co.*, 254 Or 624, 459 P2d 991 (1969).[1] The Administrative Order reads in part:

"* * * * *

"6. The Board and the Closing and Evaluation and Hearings Divisions' orders shall show separ-

---

[1] *Ryf* did not make such separate awards for unscheduled disability so the reason for the Administrative Order is not clear.

ately the permanent physical disability component and the permanent loss of earnings component involved in the unscheduled permanent partial disability.

"* * * * * *"

The Closing and Evaluation Division's award for permanent partial disability reads as follows:

"* * * 64 degrees for unscheduled low back disability, plus 108 degrees for permanent loss of wage earning capacity. This disability was determined by comparing your present condition to your condition before this injury and without such disability. * * *"

This separated award was affirmed by the hearing officer. It would appear that neither the Closing and Evaluation Division nor the hearing officer, nor, for that matter, the Workmen's Compensation Board, considered that the divided award might be construed to be double compensation. Rather to the contrary.

■ ■ As has recently been pointed out in *Ford v. SAIF*, 7 Or App 549, 492 P2d 491 (1972):

"* * * [L]oss of *earning capacity* is the proper test in determining the extent of unscheduled disability. * * *"

and

"* * * [S]everity of initial injury and physical incapacity which do not affect earning ability are extraneous to the evaluation of the extent of unscheduled disability * * *."

It follows then, that in the present case it was error to attempt to separate physical disability and loss of earning capacity in making the award. It is also pointed out in *Ford* that it is necessary to distinguish

"earning capacity" from "earnings." In that connection the following is quoted in *Ford*:

> " 'The term "disability" is not restricted to such disability as impairs present earning power. Age, education, training, general physical and mental capacity and adaptability should be taken into consideration in arriving at a just conclusion as to the percentage of the impairment of a workman's earning capacity.' 11 Schneider, Workmens Compensation Text 383-84, Disability § 2305 (1957)."

■ The claimant in this case is a relatively young man, 29 at the time of the accident in 1969. He has only a high school education and, as the hearing officer found: "* * * no training or skill levels outside of his work in the woods as a hook tender or choke[r] setter. * * *" His employer re-employed him after his recovery but within six months discharged him, ostensibly because he found an older, more experienced man who could do claimant's work and also help with bids. Claimant applied for a position with Weyerhaeuser Company, was given a physical examination and was turned down. Georgia-Pacific Corporation, whose personnel manager was a neighbor of claimant, would not accept his application. He did then obtain employment as a truck driver but his earnings were approximately $1.50 per hour less than before. Physically, his injury was described by the doctor as a rather marked "compression fracture of L1 with loss of about two-thirds of the anterior stature of the bone. * * *" The doctor also stated: "* * * I do not feel with this injury that Mr. Grossen should return to work in the woods. * * *" While this young man appears industrious and willing and able to work at gainful occupation, he recognizes that he was slower after his recovery and his back tired when

he tried to do the logger-type work. He does have a serious loss of earning capacity because of the limitation of his education and his apparent inability any longer to do hard, physical work involving the use of his back. We think the award made by the Closing and Evaluation Division of the Workmen's Compensation Board of 172 degrees, affirmed by the hearing officer and adopted by the circuit court, is higher than is warranted under the facts disclosed here. On the other hand, we find the amount determined by the Workmen's Compensation Board on review, of 64 degrees, too low. Taking into account, as nearly as we can, all of the factors involving plaintiff's earning capacity, i.e., his age, training, general physical and mental capacity and adaptability, we evaluate claimant's unscheduled disability at 118 degrees.

We come now to the employer's challenge of the allowance of attorney's fees.

There are really two separate questions that can arise concerning attorney's fees in a workmen's compensation case: (1) who pays the bill of the claimant's attorney, i.e., the claimant or the employer; and (2) what is the proper amount of the fees?

■ In Oregon the general rule is that the claimant pays his own attorney. *See* ORS 656.388. Arthur Larson in 3 Larson, Workmen's Compensation Law § 83.11 (1971), points out that this is the general rule elsewhere:

"The basic rule applicable to a compensation case is the same as that for any other kind of case: Each party pays his own lawyer, win or lose. * * *"

However, this general rule has been modified in Oregon by a variety of statutes that provide in certain situations the claimant's attorney must be paid by the

employer.[2] In the case at bar the question is whether this is one of the situations where the claimant's attorney must be paid by the employer.

Two Oregon statutes govern the allowance of attorney's fees in proceedings in the circuit courts. ORS 656.386 is not relevant to this case since it applies only to appeals to the circuit court following a rejection of a claim. *See Grudle v. SAIF,* 4 Or App 326, 479 P2d 250 (1971). In this case the claim was never rejected; the dispute throughout has been the extent of disability.

The controlling statute is ORS 656.382(2):

> "If a request for hearing, request for review or court appeal is initiated by an employer or the fund, and the hearing officer, board or court finds that the compensation awarded to a claimant should not be disallowed or reduced, the employer or fund shall be required to pay to the claimant or his attorney a reasonable attorney's fee in an amount set by the hearing officer, board or the court for legal representation by an attorney for the claimant at the hearing, review or appeal."

We have previously held that this statute only authorizes ordering the employer to pay the fees of claimant's attorney in the circuit court when the *employer* has appealed to the circuit court. *Bailey v. Morrison-Knudsen Co.,* 5 Or App 592, 485 P2d 1254 (1971). In this case the *employe* appealed to the circuit court.

When the trial judge was passing on the question of the availability of attorney's fees, the *Bailey* case had not been decided.

---

[2] The history of the development of this legislation is reviewed in Peterson v. Compensation Dept., 257 Or 369, 477 P2d 216 (1970).

■ The fee schedule promulgated by the Workmen's Compensation Board March 1, 1966, pursuant to ORS 656.388(4), urged as controlling by claimant, is not applicable to the question of whether the claimant or employer pays the claimant's attorney fees. The Workmen's Compensation Board schedule sets generally maximum fees; it applies only to the *amounts* of fees, and is not involved with who pays the fees.

■ The trial judge erred in ordering the employer to pay the fees of claimant's lawyer for proceedings in that court. As we have pointed out before, if this is a harsh result, the remedy lies with the legislature. *Bailey v. Morrison-Knudsen Co.,* supra.

The order that the employer pay claimant's circuit court attorney's fees is reversed. The case is remanded to the circuit court so that the procedures may be taken for the allowance of attorney's fees payable from claimant's compensation, pursuant to ORS 656.386(2) and ORS 656.388.

Affirmed as modified as to the award of compensation; reversed and remanded as to the award of attorney fees.