Argued March 29, affirmed May ·18, 1972

PETTIT, *Respondent, v.* AUSTIN LOGGING
COMPANY (No. 6321), *Appellant.*

497 P2d 207

*Philip A. Mongrain,* Portland, argued the cause and filed the briefs for appellant.

*William E. Taylor,* Gold Beach, argued the cause for respondent. With him on the brief was William A. Babcock, Springfield.

Before SCHWAB,* Chief Judge, and LANGTRY and THORNTON, Judges.

AFFIRMED.

---

* Schwab, C. J., did not participate in this decision.

THORNTON, J.

This is an appeal by the employer from an adverse order of the circuit court adopting the findings of the hearing officer and the Workmen's Compensation Board (with one exception), affirming the orders of the hearing officer and Board in favor of claimant, and awarding $1,000 attorney fees for the appeal to the circuit court.

Claimant was employed by Austin Logging Company as a cat skinner. In the latter part of June 1967 while yarding logs with a D8 cat in a particularly hilly and rocky area, claimant reported that he had suffered a back injury as a result of "jarring and jolting." On July 6 he saw Dr. Caughran, stating that he had injured his back while operating the cat and was suffering from numbness in his legs. The doctor diagnosed his condition as "Acute Lumbosacral Strain; Possible herniated disc" and referred him to a surgeon. He continued working for several days, however, in spite of extreme difficulty and discomfort.

On July 10 he saw Dr. Samuel, a chiropractic physician, then on July 14 Dr. Luce, a surgeon. The latter recommended x-rays of the dorsal spine, myelography and surgery, which were subsequently carried out the latter part of July. Claimant returned to work in November 1967. The symptoms recurred after defendant had been working about two months.

In February 1968 claimant returned to Dr. Luce, who recommended, following examination and x-rays, a repeat myelography and that claimant should discontinue working. The second myelography on April 9, and the third on October 14, were performed. On October 21 Dr. Luce reported that the claimant must be considered as a multiple sclerosis suspect. Claimant was referred to Dr. Dow in Portland.

On November 14, 1968, Dr. Dow reported that in his opinion claimant had multiple sclerosis. He believed that the claimant's temporary improvement in condition was due to a remission of the multiple sclerosis and that the surgery was not the reason for the improvement.

On January 10, 1969, the insurance carrier for the employer notified claimant that it was denying responsibility for multiple sclerosis and submitting the medical records to the Workmen's Compensation Board and requesting a determination of benefits in his claim. In February the Director of the Closing and Evaluation Division of the Workmen's Compensation Board wrote to the carrier requesting a current examination of claimant by Dr. Luce. The doctor reported on March 3 that it was unnecessary to re-examine claimant, stating that there were no permanent residuals that could be s e p a r a t e d from the multiple sclerosis and he did not consider that there was any relationship between the injury and multiple sclerosis. On March 31 the division made its award of temporary total disability to March 4, 1969, less time worked, and made no award of permanent partial disability resulting from the injury.

Dr. Swank examined claimant on October 15, 1969, and reported January 13, 1970, as follows: That the disease was not necessarily aggravated by the work which claimant was doing, except that it may have been too strenuous; that from his experience surgery on patients with multiple sclerosis was hazardous because it was apt to precipitate exacerbation of the disease; that in his opinion the laminectomy by virtue of causing an exacerbation of the multiple sclerosis, plus the multiple sclerosis itself, had rendered the

workman incapable of being gainfully and suitably employed.

The hearing officer made the following determinations: (1) That the defendant accept the claim of claimant for aggravation of the pre-existing multiple sclerosis condition for processing, for payment of appropriate temporary total disability benefits from March 4, 1969, until the claim is closed in accordance with ORS 656.268; (2) that the claim be remanded to the Closing and Evaluation Division of the Workmen's Compensation Board for determination of permanent disability, including the multiple sclerosis aggravation; and (3) that the claimant's attorney be awarded $950, to be paid by defendant.

Thereupon the defendant filed its request for review, and the Workmen's Compensation Board entered its order on review. The defendant then filed its notice of appeal, following which, on August 10, 1971, a hearing was held before the circuit judge. After oral argument the court rendered its decision. The findings of the hearing officer were for the most part accepted, except as supplemented by the judge and striking the award of attorney fees to be paid by defendant.

On appeal the employer makes the following contentions:

(1) That employer's letter of January 10, 1969, denying responsibility for the multiple sclerosis and "submitting all of the medical reports in your case to the Workmen's Compensation Board and we are requesting a determination of benefits in your claim" was a valid and effective "partial denial" of claimant's claim and became *res judicata* with claimant's failure to contest such denial;

(2) That even if the hearing officer did properly consider this issue the evidence fails to show that claimant's work and medical treatment aggravated his condition; and

(3) The trial judge abused his discretion in awarding excessive attorney fees for the proceedings in circuit court.

■ Judicial review of compensation claims is *de novo* on the record to the same extent as in appellate review proceedings in equity. *Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971).

■ Taking up the employer's first point, we agree with the trial judge, the Board and the hearing officer's opinion and order that the letter of January 10, 1969, was ambiguous; that it was neither a denial of a compensable claim *ab initio* nor a denial of a claim of aggravation of the pre-existing multiple sclerosis. The letter, while purporting to disclaim "responsibility from multiple sclerosis," advised the claimant that the claim was being submitted to the Board for a "determination of benefits in your claim." However, the claim had already been accepted and was in fact on January 17, 1969, submitted to the Board for determination under ORS 656.268. A determination order of the Board on March 31, 1969, awarded claimant compensation for temporary total disability to March 4, 1969, less time he had worked. Further, the letter was not a valid and effective denial of the multiple sclerosis. As the hearing officer held, "[t]he carrier did not expressly disclaim responsibility for aggravation and it will not be inferred." It failed to state with reasonable certainty what was being denied as required by ORS 656.262 (6).

The trial judge in the case at bar in his opinion stated:

"\* \* \* It is not necessary to decide whether there may be a partial denial of the claim, as the Hearing Officer correctly analyzes the letter of January 10, 1969 as not amounting to a denial \* \* \*."

We agree that the letter of January 10 did not constitute a valid and effective denial of Mr. Pettit's claim. We reserve ruling on whether there may be a partial denial of a Workmen's Compensation Board's claim.

■ Taking up the employer's second point, it is our conclusion that claimant's multiple sclerosis condition was aggravated by the industrial injury. While the hearing officer did not find such to be the case the trial judge in addition to adopting the findings of the hearing officer that the symptoms were a form of 'masking' and that the surgical procedures were a form of indirect aggravation, also found that "claimant's neurological problem was \* \* \* exacerbated by the work activity which was accepted as an industrial accident \* \* \*." We agree.

The testimony of the claimant and a fellow workman, as well as claimant's wife, makes clear that the work in which claimant was engaged during the last week in June was unusually rigorous. The ground on which the claimant was operating the cat was rough and rocky. He was working alone and at greater than usual speed. During the week he developed back pain, was more tired than usual at the end of the day, and was extremely tired at the end of the week.

Dr. Swank, a specialist in multiple sclerosis, testified on deposition as follows:

"Q In the answers that you have given us here did you have in mind the history that I had given you which is a little different than the way you interpret it, that the onset of the recent symptoms was following the operation of the tractor over rough ground in the latter part of June or July, 1967?

"A I don't know how much influence this would have on the situation. Any kind of hard work, you know, fatiguing work, will make, will bring on the symptoms, bring back symptoms, or bring on new symptoms, but I find it a little difficult to evaluate it because I would just have to lump it along with stress in general, but if the work was hard and very fatiguing for him the chances are that it would aggravate the disease. * * * He didn't talk to me very much about this. This was in the records that I got later on.

"* * * * *

"Q You cannot say with any degree of medical certainty, can you, that the work activity that has been related to you in this hypothetical and also related to you by the client on or about July or August, 1967, was a material contributing factor to the symptomatology that he had?

"A Are you talking about the tractor?

"Q Yes.

"A As I said before, this is a little difficult for me to evaluate, but that if this were sufficient stress to cause a lot of fatigue, you know, then it could be, it very likely was a contributing factor, and this is what I think would have to be evaluated, and I cannot evaluate that now. I do not really know the nature of the work, and I don't know how difficult it was for him, but the general statement is that if the work is very fatiguing then it is apt, I mean is reasonable, probable, there is a rea-

sonable probability that it will exaggerate or aggravate the disease.

"Q Really to base your opinion as to medical probability or certainty, you would have to really examine him at the time to determine whether or not the work was sufficiently fatiguing to him at that time to have made the multiple sclerosis symptomatic?

"A It would have been very helpful to have seen him, you know, near, close to that time.

"* * * * *

"Q So if anything did aggravate the multiple sclerosis, it was not work activity but it was the surgery?

"A I would say in all probability that the surgery was an aggravating factor and that, depending upon the conditions, the qualifications which I gave you before, the work activity might have aggravated it or might not have."

The procedures performed on claimant consisted of three myelograms and a laminectomy. We find that these procedures aggravated the disease. Dr. Swank's testimony to this effect is undisputed. Neither Dr. Luce nor Dr. Dow discussed this matter in their reports. There can be no inference drawn that they considered the effect of the surgery upon the development of the disease.

We conclude that the back strain initially suffered by claimant 'masked' the existence of the multiple sclerosis and as a result the disease and its treatment were delayed and its effects were aggravated by the procedures performed. The symptoms which appeared to be the result of the industrial accident led both Dr. Samuel, the chiropractic physician, and Dr. Luce, the medical doctor, to suspect a disc lesion

and resulted in the performance of the myelograms and a total laminectomy, and two additional myelograms by Dr. Luce. The medical reports which were summarized in the opinion and order of the hearing officer show the sequence of events which finally led to the diagnosis of multiple sclerosis which was first suspected by Dr. Luce on October 21, 1968. These reports studied in retrospect and Dr. Swank's testimony led to the conclusion that the injury exacerbated the multiple sclerosis and caused it to flare up; that as aggravated it was probably the principal cause of claimant's complaint and that its existence was overlooked because of the fact that the injury he had sustained would have produced similar symptoms. It is therefore a bona fide case of 'masking' such as was found compensable in *Waibel v. State Compensation Dept.*, 3 Or App 38, 471 P2d 826 (1970).

██ Lastly, we consider the employer's contention that the trial judge abused his discretion in awarding attorney fees of $1,000 for the proceedings in the circuit court. Attorney fees are allowable to claimant where the employer prosecutes an unsuccessful appeal. ORS 656.382(2). Considering the complexity of the case and the importance of the issue involved, we cannot say that the trial judge abused his discretion in making the fee award. Attorney fees for subsequent proceedings will be allowed by this court on motion. *Logan v. Boise Cascade Corp.*, 5 Or App 636, 485 P2d 441, Sup Ct *review denied* (1971).

Affirmed.