Argued June 23, affirmed August 10, 1972

COMPTON, *Respondent and Cross-Appellant, v.*
TILLAMOOK VENEER COMPANY, *Appellant
and Cross-Respondent.*
499 P2d 1367

*Roger R. Warren,* Portland, argued the cause and filed the briefs for appellant and cross-respondent.

*James B. Griswold,* Portland, argued the cause and filed the brief for respondent and cross-appellant.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Appellant employer appeals from a decision of the circuit court awarding claimant, respondent herein, permanent partial disability in the amount of 128 degrees for unscheduled neck and related disabilities.

The Closing and Evaluation Division had made an identical award but the hearing officer and the Workmen's Compensation Board had concluded claimant was, in effect, a malingerer, and determined that he was entitled to nothing. As stated, the circuit court reinstated the original award. However, it declined to grant attorney fees against the employer. Respondent cross-appeals and asks for attorney fees against the employer, both in this court and for the hearings below.

Claimant is now 53 and has worked all his life at hard manual labor. He has, however, been the victim of some serious injuries. In November 1952 in a fall at the McNary Dam where he was a construction worker, he sustained very serious injuries, particularly to his foot and his back, necessitating a long course of medical and surgical procedures. Following

an ankle fusion his then surgeon, Dr. E. G. Chuinard, reported on April 24, 1956, "He will never be able to do hard work again." In July 1956 he was required to undergo a triple arthrodesis to correct "the extreme valgus in the mid portion of the foot." He also still complained of low back pain. This claim was finally closed with an award of 75 per cent loss function of the foot plus 25 per cent loss function of an arm for the chronic strain of the back in the mid dorsal area. He continued thereafter to wear a brace on his lower right leg to keep the ankle from turning sideways.

Despite the prophecy of his doctor that he could never "do hard work again," claimant subsequently went to work for Tillamook Veneer Company at hard physical labor in 1964. At the time of the injury here involved he was employed as a belt sander operator. In October 1967 he sustained a further injury to his low back on the job. Because of it he was off work for part of a month and then returned to his regular employment. He continued, however, to receive treatment for that back injury through April 1968. As a part of that treatment he wore a back brace for some time to enable him to work.

The present injury resulted from an on-the-job fall which took place in January 1969. No question is raised concerning the fact that he sustained injury therein. Prior to this injury he had continued to experience some difficulty with his back and leg.

The injury of January 1969 occurred when he was lifting a plywood panel from the plywood belt sander. A sharp pain resulted from the twisting of his back while engaged in lifting the panel. This injury caused significant neurological deficit indicated by much weakness. In May 1969 as a result of the ac-

cident major surgery was performed on Mr. Compton in the form of a complete laminectomy at C-5, C-6 and C-7 levels of the cervical spine. Each of the three spinous processes were removed. The surgeon's post-operative report of June 24, 1969, points out:

"* * * He did well in the hospital and is slowly improving at home. He still has some weakness in his grip, a little more marked on the left than on the right. Biceps is slightly weak in the left; triceps is good on the left. He has no complaints referrable to his legs.

"I have encouraged him that his progress would be slow, but I believe he is continuing to slowly improve. He is to begin exercising his upper extremities. * * *"

In December 1969 he was examined by a neurosurgeon. Concerning the condition of his upper extremities the report concludes:

"* * * At the present time we have a 52-year-old man who has atrophy of muscles subserved by the left ulnar nerve, weakness which is most marked in the intrinsic muscles of the left hand and the distal left arm, that is, in flexion and extension of the wrist and fingers. This weakness does not conform to a single nerve root or to a peripheral nerve root distribution. It could be secondary to a circle cord compression at C 6 level with some anterior horn cell degeneration or multiple nerve root injuries of C 5-6 and C 7-8 primarily on the left."

All of the medical testimony in this case was in the form of reports. The only persons who appeared personally before the hearing officer were the claimant and a psychologist who had examined him in relation to his suitability to engage in a retraining program. Both the hearing officer and the psychologist were greatly influenced by the existence of some dirt and

callouses on the hand whose grip was claimed by Mr. Compton to be most impaired. Largely on this basis the hearing officer concluded that the claimant was a malingerer and denied him any award. The Board affirmed.

■ Essentially, however, this case rests upon the work and medical histories. Since the hearing officer heard no medical witness, his decision concerning the content of the medical reports, though entitled to consideration, is of no more weight than that of the circuit judge. We review de novo.

In *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971), we said:

"* * * *Omlie et ux v. Hunt,* 211 Or 472, 316 P2d 528 (1957), pointedly affirms that de novo review means trial anew on the record without regard to the findings of the trial court except with regard to issues turning on witness credibility. That case involved a contested adoption. The judge who presided died after completion of the hearing, but before he had rendered his opinion. The parties stipulated that it should be retried upon a transcript of testimony taken at the previous trial and this was done by a domestic relations judge. The plaintiff appealed from the decree. On appeal the Supreme Court reversed, saying:

"'* * * [S]ince the trial court did not have the benefit of actually seeing and hearing the witnesses at the time their testimony was given, *the usual reason for attaching weight to the trial court's finding does not exist.* Difficult as it is, this court must decide for itself whether the evidence shows willful desertion and neglect by the natural father.' (Emphasis supplied.) *Omlie et ux v. Hunt,* supra, at 476-77." 4 Or App at 188-89.

■ A review of both the work and the medical history of this claimant satisfies us that the circuit court correctly concluded that the claimant was entitled to the award of 128 degrees permanent partial disability for unscheduled injuries first given him by the Closing and Evaluation Division.

■ Since the employe appealed to the Board and to the circuit court, he is not, under *Grossen v. Griffey & Laird Logging,* 7 Or App 600, 492 P2d 820 (1972), entitled to fees against the employer for those hearings. He is, however, entitled, upon proper application, to fees in this court. ORS 656.301 (2); *Logan v. Boise Cascade Corp.,* 5 Or App 636, 485 P2d 441, Sup Ct *review denied* (1971); *Pettit v. Austin Logging Co.,* 9 Or App 347, 497 P2d 207 (1972).

The judgment is affirmed.