Argued June 23, affirmed July 15, 1971

HAWES, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND, *Respondent.*

486 P2d 1294

*Harold W. Adams,* Salem, argued the cause for appellant. With him on the brief were Estep, Daniels, Adams, Reese & Perry, Salem.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort,* Judges.

PER CURIAM.

The sole issue in this appeal is the extent of the claimant-appellant's permanent partial disability. We concur in and adopt the opinion of the trial judge, which reads:

"The claim was closed with an award of 5% (16 degrees of the maximum 320 degrees) loss of the workman for unscheduled disability. The hearing officer increased this to 160 degrees, and the Workmen's Compensation Board allowed 80 degrees.

"The injury is an unstable back caused accidentally on May 1, 1968, while the claimant was working for the Conestoga Manufacturing Company.

"I agree with the Board's conclusion, but not with all the reasons given in support of it. The Board found that 'the recommendation (of the Medical Examiner, Physical Rehabilitation Center, Workmen's Compensation Board * * *) to avoid heavy work is not chargeable to the accident at issue.' The report of the Center, signed by Dr. C. Elmer Carlson, does not so state, and I think it is not a supportable finding. On October 1, 1959, claimant had a ruptured intervertebral disc removed from the fourth and fifth lumbar interspace, but by 1967, he was able to hold down his job at Conestoga with the attendant heavy work until the accident of May 1, 1968, which precipitated the condition that called for the Center's recommendation. Since we are dealing with a case of injury resulting from an industrial accident which, concededly, is compensable, I think it should not be assumed that the recommendation is chargeable to

---

* Fort, J., did not participate in this decision.

something else than that accident. See *Baker v. SIAC*, 128 Or 369.

"On the whole of the evidence, however, the Board's decision seems to me to be fair and reasonable. Claimant was 35 years old at the time of the accident. He is a high school graduate and received some schooling in the U. S. Navy in which he served four years. He has had various occupations; tending bar, selling insurance, and for four years, salesman and office manager for a real estate firm. He also worked in a veneer plant both before and after the surgery of 1959. Prior to August, 1960, and after that surgery, he quitted this job apparently because of some trouble he was experiencing with his low back, and went to work as an insurance salesman. His doctor stated respecting his condition at that time 'minimal residuals of ruptured intervertebral disc.' * * *.

"There is no evidence of claimant's earnings prior to his accident, except that he stated that he started to work at Conestoga to learn the trade of cabinet making at less than $2.00 an hour, 'not because they pay big money'. Since the accident, claimant has not had any remunerative employment except for a few days when he returned to his former job at Conestoga.

"Since January, 1969, or before, claimant has been taking a course in architectural drafting at Portland Community College under the auspices of the Department of Vocational Rehabilitation. His home is in Mt. Angel, 40 miles distant from the College, and he drives the round trip, 80 miles, five days a week, except on Mondays when he starts a little late. His classes are from 8:00 o'clock in the morning until 4:00 o'clock in the afternoon. Four hours in the morning four days a week are spent in the drafting class. He has maintained a grade point average of 3.20; 4.00 would be a straight A. He testified that his back becomes irritated from sitting for extended periods of time, either in class or while driving, and that he usually, on returning

home, lies down on the daveno for an hour or so. His wife usually prepares dinner, although he sometimes does.

"There is evidence of two sudden exacerbations of his back injury with acute pain suffered by the claimant; one on December 31, 1968, and the other on September 23, 1969. I do not accept the contention of counsel for the Industrial Accident Fund that these are to be classed as independent injuries not sustained in the course of employment. I would hold them to be a part of the injury of May 1, 1968. There as [sic] been no reoccurrence of an acute condition since September, 1969, and the claimant has been able to carry on with his vocational training and to do very well at it.

"I accept the characterization of the claimant by the hearing officer 'as a sincere, industrious type person who is highly motivated to return to the work force.'

"As I understand the law, impairment of earning capacity is a prime consideration in determining the degree of an unscheduled disability. Ryf v. Hoffman Construction Co., 254 Or 624, 89 Adv. Sh. 483, 491 [459 P2d 991, 1970]. And, as stated in 11 Schneider, Workman Compensation Text, 383-384:

" 'The term "disability" is not restricted to such disability as impairs present earning power. Age, education, training, general physical and mental capacity and adaptability should be taken into consideration in arriving at a just conclusion as to the percentage of the impairment of a workman's earning capacity.'

"Disability evaluation under the present law 'is based on the whole man', Larson, Workmen's Compensation Law, Section 57.10, pg. 16, and in measuring its extent, the fact finder is not limited to the question whether claimant is able to return to his former occupation. Consideration must be given to the ability 'to perform or obtain work suitable to claimant's qualifications and training.' Larson, op. cit., Section 57.22.

"I have examined the evidence in this case with all the foregoing factors in mind, and, as already indicated, have reached the conclusion that the decision of the Board should be affirmed."

Affirmed.