Argued December 1, 1971, affirmed January 6, 1972

FORD, *Respondent, v.* STATE ACCIDENT
INSURANCE FUND, *Appellant.*

492 P2d 491

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*J. David Kryger,* Albany, argued the cause for respondent. With him on the brief were Emmons, Kyle, Kropp & Kryger, Albany.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

On this appeal the State Accident Insurance Fund contends that the circuit court's award for unscheduled permanent partial disability was too large. Its contention in substance is that the determinative factors are:

(1) The plaintiff has returned to his pre-injury employment;

(2) Plaintiff's employer is well-satisfied with the quality of plaintiff's work; and

(3) Plaintiff is earning more money per hour than he was prior to his injury.

We agree that these facts are relevant, but not that they are necessarily determinative.

The claimant at the time of his injury was in his mid-30's. He has an eighth-grade education. His work experience is limited to heavy construction, farm labor and plywood manufacturing. He was, prior to the injury, and is now again, employed in what is primarily a supervisory job in a plywood plant. In 1967 he sustained an accidental injury which resulted in severe burns to his face, back and arms, with 50 percent of his body being burned. He spent considerable time in the hospital for treatment of his injury, including skin grafts, and was disabled for approximately one year. He then returned to his old job and his employer describes him as a "better than the average" workman who is "doing his job superbly." At the time claimant was injured he was earning $3.32 per hour; at the time of hearing he was earning $3.73½ per hour.

He was awarded permanent partial disability for scheduled injuries to his right thumb and both arms. About these awards there is no controversy. The Closing and Evaluation Division of the Workmen's Compensation Board made an award of 16 degrees for unscheduled disabilities; the hearing officer raised this award to 192 degrees; the Workmen's Compensation Board reinstated the initial determination of 16 degrees, and, finally, the circuit court fixed the claimant's unscheduled disability at 128 degrees.

Both parties cite *Surratt v. Gunderson Bros.*, 3 Or App 228, 471 P2d 817, *modified* 259 Or 65, 485 P2d 410 (1970), and *Hawes v. SAIF,* 6 Or App 136, 486

P2d 1294 (1971), to us as authority for their positions. Those cases hold that consideration of pain and suffering, severity of initial injury and physical incapacity which do not affect earning ability are extraneous to the evaluation of the extent of unscheduled disability; that loss of *earning capacity* is the proper test in determining the extent of unscheduled disability. In order to properly apply the rule set forth in those opinions it is necessary to distinguish "earning capacity" from "earnings," for as *Hawes v. SAIF*, supra, at 1833, points out:

> " ' "The term 'disability' is not restricted to such disability as impairs present earning power. Age, education, training, general physical and mental capacity and adaptability should be taken into consideration in arriving at a just conclusion as to the percentage of the impairment of a workman's earning capacity." ' " 11 Schneider, Workmens Compensation Text 383-84, Disability § 2305 (1957).

Earning capacity must be considered in connection with a workman's handicap in obtaining and holding gainful employment in the broad field of general industrial occupations and not just in relationship to his occupation at any given time. A workman's post-injury earnings is evidence which, depending upon the circumstances of an individual case, may be of great, little, or no importance in determining loss of earning capacity. A person whose physical and mental capacities have been impaired not at all by an injury may voluntarily choose to enter an occupation which provides less compensation than his pre-injury occupation. Likewise, a person with almost total physical disability may find a post-injury occupation not involving physical effort which pays him substantially more than his pre-injury occupation—yet such a man is severely dis-

abled in terms of ability to obtain and hold gainful employment in the broad field of general industrial occupations. Applying these principles to the facts of this case, we conclude that the circuit court's award for unscheduled disability was correct.

As above pointed out, the claimant has a limited education and his work experience is limited to heavy construction, farm labor and his present employment which, in fact, is light work. He is subject to extreme fatigue. He has a marked sensitivity to heat. He is unable to expose himself to the sun for any longer than 15 minutes. He has difficulty in sleeping due to the extreme sensitivity of his ears. He perspires very easily and perspiration results in an itching sensation on the burned areas of his body and he suffers from skin eruptions. Because of these impairments, coupled with his scheduled disabilities, he cannot return to work in the construction field due to the physical activity required. He cannot return to farm work due to required exposure to the sun as well as to the required physical activities. Further, he is limited to his present job in the plywood manufacturing business and cannot perform other kinds of work he previously did in plywood manufacturing.

Affirmed.