Argued and submitted May 9, reversed September 26, 1984

In the Matter of the Compensation of
Betty J. Howerton, Claimant.

HOWERTON,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(81-05697; CA A30044)

688 P2d 422

Nicholas D. Zafiratos, Astoria, argued the cause and filed the brief for petitioner.

Donna Parton Garaventa, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a workers' compensation case. The issue is the extent of permanent partial disability claimant sustained as a result of a compensable injury to her lower back. In July, 1981, she was awarded 30 percent disability by determination order. The referee increased that award to 75 percent. The Workers' Compensation Board reduced the award to 45 percent. Claimant contends that the Board erred in reducing her award, and she asks us to reinstate the referee's award.

Claimant, age 55 at the time of the hearing, was employed as a nurse's aide. Her employment required her to do heavy lifting when moving patients. For three years before her injury she worked in physical therapy. That job required that she move patients from their beds to wheelchairs and therapy tables. She was injured in 1979, when she was knocked down by a patient. She also suffers from chronic tendonitis of the left hip. She has an eighth grade formal education and obtained her GED while recuperating from her injury. In 1980, she underwent a decompression laminectomy and partial discectomy.

All of claimant's examining physicians agree that because of the injury she cannot return to her previous job. Dr. Harris advised her to seek work that would not involve heavy lifting or stooping. Orthopaedic Consultants recommended that she find some other work. It rated her disability as "mildly moderate."

Claimant continues to work for the same employer. Her present job involves distributing medications to patients from a cart. She complains that after prolonged standing her left leg gets numb. That has caused her to fall at times, and she relies on the cart to stabilize herself. She frequently experiences back pain and has difficulty bending and lifting. It is necessary for her to take at least two breaks each morning and two each afternoon.

The referee found that claimant was a credible witness who was making the best of her situation. He stated:

"I conclude that she has been ousted from most of her job opportunities and has a permanent loss of wage-earning capacity that is substantial considering her past work experience, training, and her age. Looking at her ability to compete

in the open labor market for wages, her opportunities to obtain employment are grim. Claimant's having to take additional breaks in the morning and in the afternoon gives rise to a serious question of her ability to hold down a job. The inference is made that the claimant is well-liked and well-thought-of by the employer, because this is close to a sheltered workshop situation."

He concluded that she had lost 75 percent of her wage-earning capacity.

Applying the guidelines in OAR 436-65-600 *et seq.* for evaluating the extent of permanent partial disability,[1] the Board concluded that claimant's injury merited a disability rating of 45 percent. In fixing that percentage, the Board ostensibly relied on its guidelines and on "other similar cases." What other cases the Board relied on it did not say.

Claimant first argues that the Board's guidelines are invalid, because they arbitrarily assign positive and negative points for each factor.[2] We disagree. *See Fraijo v. Fred N. Bay News Co.,* 59 Or App 260, 650 P2d 1019 (1982); *OSEA v. Workers' Compensation Dept.,* 51 Or App 55, 624 P2d 1078 (1980), *rev den* 291 Or 9 (1981). The guidelines are tools the Board may use in evaluating the extent of permanent partial disability. However, it may not strictly follow those guidelines, but must always consider the total circumstances of the claimant. *See Fraijo v. Fred N. Bay News Co., supra,* 59 Or App at 269; *accord Harwell v. Argonaut Ins. Co.,* 296 Or 505, 510, 678 P2d 1202 (1984).

Claimant next argues that, assuming that the guidelines are valid, the Board misapplied them here. We will not decide whether the numeric values the Board assigned are

[1] Under the Board's rules, a claimant is first assigned an impairment rating. Various factors are then examined and positive or negative points are allocated, depending on whether the factor examined beneficially or adversely affects the claimant's earning capacity. Those factors include age, education, work experience, adaptability to less strenuous physical labor, mental capacity, emotional and psychological findings and labor market findings. OAR 436-65-602, 608. The Board assigned claimant an impairment rating of 30. It added +9 for age, +3 for work experience and +10 for adaptability. It assigned no points for the other factors but did not explain its reasons for this determination.

[2] Age, for example, is given a −10 if it mitigates the extent of disability, *see* OAR 436-65-602, but all other factors are given a maximum of −25.

correct. Instead, on *de novo* review, we conclude that, considering all of her circumstances, claimant was inadequately compensated. We find that the Board gave insufficient weight to claimant's difficulty in finding employment on the open labor market. That she is now employed by the same employer and is receiving a higher wage than she was receiving at the time of her injury is not controlling. Our inquiry must focus on her earning capacity.

ORS 656.214(5) provides, in relevant part:

> "Earning capacity is the ability to obtain and hold gainful employment *in the broad field of general occupations,* taking into consideration such factors as age, education, training, skills, and work experience." (Emphasis supplied.)

*See* OAR 436-65-600(2). Claimant will experience considerable difficulty in obtaining gainful employment as a result of her physical limitations. The referee characterized her potential employability as "grim." Because of her loyalty and perseverance, her employer has been flexible in adapting her work to her condition. However, there is no indication that other potential employers would be as accommodating. She cannot stand or sit for extended periods. She can walk, but she will occasionally fall without the aid of something to support her. She must take frequent work breaks. Those facts, combined with other facts found in the record, satisfy us that the referee's assessment was correct. *See Zeigler v. Coast to Coast Stores,* 23 Or App 198, 541 P2d 1070 (1975); *Ford v. SAIF,* 7 Or App 549, 492 P2d 491 (1972).

Reversed; referee's order reinstated.