Argued and submitted September 18, 1985, reversed, referee's order reinstated
May 21, 1986

In the Matter of the Compensation of
Beverly J. Watkins, Claimant.

**WATKINS,**
*Petitioner,*

*v.*

**FRED MEYER, INC.,**
*Respondent.*

(WCB 83-08840; CA A34191)

719 P2d 920

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief were Jeffrey S. Mutnick,

Portland, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Yvonne Meekcoms, Portland, argued the cause for respondent. With her on the brief were Deborah L. Sather and Moscato & Byerly, Portland.

Before Richardson, Presiding Judge, and Warden, and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant petitions for review of an order of the Workers' Compensation Board which modified the referee's order that had awarded her 45 percent unscheduled disability for injury to her neck. The Board found claimant's disability to be 20 percent. We reverse and reinstate the referee's order.

Claimant was 53 years old at the time of the hearing. She had worked for employer as a grocery checker and earned $7 to $8 per hour. In August, 1979, in a lifting incident, she sustained a compensable injury to her neck, which was diagnosed as a cervical strain. She received conservative treatment and in January, 1980, was released to return to work. She returned to work as a checker, but the lifting involved exacerbated her neck symptoms. Employer then gave her lighter duty, counting promotional coupons. That job paid approximately $3 to $4 less per hour than her job as a checker. In January, 1981, the parties stipulated to an order that claimant receive a 20 percent unscheduled neck disability award. In September, 1981, employer eliminated claimant's position as a coupon counter.

When employer terminated claimant, it referred her to vocational rehabilitation. Her vocational background consisted almost entirely of employment as a grocery clerk. After evaluation, her vocational counselor recommended that she enroll in a training program in hairdressing, cosmetology and manicure. She successfully completed the program and passed the state board examination. She also acquired her GED. With the assistance of the rehabilitation consultants, she obtained employment in a beauty salon.

Claimant testified that she is physically able to work as a hairdresser in her current position. The job requires virtually no lifting, and she can stagger her schedule of hair appointments and nail appointments so that she can alternately sit and stand. Also, if she finds herself strained, she often is able to refer customers to co-workers. At the time of the hearing, claimant was working approximately 30 hours a week for $4 per hour and no fringe benefits. She testified that employer's grocery checkers were then earning between $11 and $12 per hour, including benefits.

■ ■ Claimant filed for a redetermination of her claim pursuant to ORS 656.268(5), which provides:

"When the worker ceases to be enrolled and actively engaged in [a vocational training program], the Evaluation Division shall redetermine the claim * * * unless the worker's condition is not medically stationary."

When the Evaluation Division did not increase the January, 1981, stipulated award of 20 percent, claimant requested a hearing. The referee found claimant to be an "entirely credible witness" and concluded that her disability had significantly impaired her earning capacity. He stated:

"This worker isn't just precluded from working as a grocery checker. She is precluded from doing any work which involves lifting, prolonged standing, or prolonged use of her arms in an extended or flex position. She has had to discontinue golfing and bowling which, to me, indicates significant limitation in the use of her shoulders and upper torso.

"After giving consideration to all the evidence, I conclude claimant has sustained a marked loss of earning capacity. I conclude that loss is equal to 45% of the maximum available."

The Board reversed the referee's order and reinstated the Evaluation Division's determination order:

"The Referee's order in this case seemingly fails to take into account the fact that since the parties stipulated that claimant sustained a 20% unscheduled disability, she has increased her potential earning capacity in at least two ways. Since the parties' January 1981 stipulation, claimant has received her GED. More significantly, however, since that time claimant has acquired the skills, as well as the licensing, required to perform work as a hairdresser, cosmetologist or manicurist. As a result, she has obtained employment in this field.

"As defined by ORS 656.214(5), earning capacity is 'the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, training, skills and work experience.' Considering this definition of earning capacity, we believe the evidence of record warrants the conclusion that claimant's earning capacity has increased, rather than decreased, since the parties' stipulation awarding 20% unscheduled disability. Under these circumstances, we find that claimant is not entitled to an additional unscheduled award."

The Board's reliance on the stipulated award was incorrect. After she completed vocational rehabilitation,

claimant was entitled to a *new* determination without regard to the previous award. ORS 656.268(5); *Hanna v. SAIF,* 65 Or App 649, 672 P2d 67 (1983).

> "The new determination would necessarily be based on the medical and other evidence available at that time, including that concerning the success or failure of the vocational rehabilitation program. A claimant's disability may be determined to be more or less than previously supposed after vocational rehabilitation, even absent a change in his medical condition. A change in a claimant's condition is not required to obtain a redetermination of extent of disability on termination of a program of vocational rehabilitation." 65 Or App at 652.

This is not an aggravation claim;[1] claimant did not have to prove that her condition had worsened or that her earning capacity had diminished from the time of the previous award in order to prove that she was entitled to a larger disability award.

■        As with any award of unscheduled permanent partial disability, the criterion for rating the disability after vocational rehabilitation is the loss of earning capacity due to the compensable injury. ORS 656.216(5). "Earning capacity" is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, training, skills, and work experience. ORS 656.216(5). A worker's post-injury earnings can be evidence of a loss of earning capacity. *Jacobs v. Louisiana-Pacific,* 59 Or App 1, 3, 650 P2d 154 (1982); *Ford v. SAIF,* 7 Or App 549, 552, 492 P2d 491 (1972).

■        We agree with the referee's conclusion that claimant's injury precludes her from a large segment of the labor market, including her previous occupation of checking.[2] After successfully completing vocational rehabilitation, she was placed in a position in which she earns less than half of her pre-injury wage. Although it is true, as employer argues, that claimant may eventually move into a more lucrative position in cosmetology, her physical limitations make that prospect

---

[1] *See Stepp v. SAIF,* 78 Or App 438, 717 P2d 216 (1986).

[2] Employer does not dispute that claimant's disability is entirely due to her compensable injury.

far less likely. We find, like the referee, that claimant's compensable injury has resulted in a 45 percent loss of earning capacity.

Board's order reversed; referee's order reinstated.