Argued and submitted April 17, 1991, affirmed February 12, 1992

In the Matter of the Compensation of
Bill R. Harrison, Claimant.

Bill R. HARRISON,
*Petitioner,*

*v.*

TAYLOR LUMBER & TREATING, INC.,
and Liberty Northwest Insurance Corporation,
*Respondents.*

(WCB 89-00791; CA A66023)

826 P2d 75

Donald O. Tarlow, Newberg, argued the cause for petitioner. With him on the brief was Brown, Tarlow & Berry, P.C., Newberg.

Stafford J. Hazelett, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Claimant seeks review of an order of the Workers' Compensation Board awarding him 18 percent unscheduled permanent partial disability (PPD). We affirm.

Claimant is a 57 year old mill worker. He was working as an edgerman in February, 1987, when he injured his lower back, left leg and hip in a fall. As an edgerman, he operated sawing equipment by pushing buttons either from a standing or sitting position. Occasionally, when a piece of lumber fell to the floor, he had to return it to the conveyor belt. After his fall, he continued to have pain in his left leg and back and eventually had nerve root compression surgery in August, 1988. He was released for work in September, 1988, and has been working full time since then. He is restricted from lifting more than 10 pounds and from repeated bending and twisting. He continues to experience pain in his back and leg but is able to perform his job. Occasionally, he needs to ask for assistance in putting wood back on the conveyor belt.

On December 21, 1988, a determination order awarded claimant two percent unscheduled PPD. He requested a hearing. In assessing the extent of disability, the referee applied the standards for evaluating disabilities adopted by the Director of the Department of Insurance and Finance pursuant to ORS 656.726(3)(f).[1] Under those standards, the factors of age, education, training and adaptability are given no value in the rating of an unscheduled disability when the worker has returned to his "usual and customary work." *Former* OAR 436-35-290; *former* OAR 436-35-300; *former* 436-35-310. The referee found that

---

[1] ORS 656.726 provides,

"(3) The director [of the Department of Insurance and Finance] hereby is charged with duties of administration, regulation and enforcement of ORS 654.001 to 654.295, 654.750 to 654.780 and 656.001 to 656.794. To that end the director may:

"* * * * *

"(f)(A) Provide standards for the evaluation of disabilities. The criteria for evaluation of disabilities under ORS 656.214(5) shall be permanent impairment due to the industrial injury as modified by the factors of age, education and adaptability to perform a given job. The term 'education' shall include the development of an objective standard for evaluating a worker's skills, training and formal education."

"claimant has returned to work at his usual job so he does not get a rating for age, education, training and adaptability."

Nevertheless, the referee increased claimant's award to 18 percent PPD. On review, the Board affirmed the award.[2]

■     In his first assignment of error, claimant contends that the Board's failure to consider his age, education, training and adaptability in calculating the extent of disability is inconsistent with the requirements of the 1987 version of ORS 656.214(5), which provided:

"In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, *the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, impairment and adaptability to perform a given job.* The term 'education' shall include a worker's skills, training and formal education. The number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the worker before such injury and without such disability. For the purpose of this subsection, the value of each degree of disability is $100." (Emphasis supplied.)

Administrative rules must be consistent with an agency's statutory authority. The agency may not alter, amend, enlarge or limit the terms of an applicable statute by rule. *Cook v. Workers' Compensation Department*, 306 Or 134, 138, 758 P2d 854 (1988). The pertinent rules here are not inconsistent with the agency's statutory authority. ORS 656.214(5) does not require that the factors of age, education, impairment and adaptability necessarily affect the extent of disability in *every* case, nor does it specify the weight to be given the factors in particular situations. ORS 656.726(3)(f) gives authority to the Director to define standards for evaluating disabilities. The particular rules challenged here were adopted under that authority and are not inconsistent with ORS 656.214.[3]

---

[2] The Board concluded that claimant is entitled to 17 percent PPD, but awarded 18 percent, because employer did not request a reduction in the referee's award.

[3] Although not applicable to this case, ORS 656.214(5) was amended in 1989 to

◼ Claimant next argues that, even if the rules are within the agency's authority, the Board's conclusion that claimant returned to his "usual and customary work" rather than to "modified work" is not supported by substantial evidence and that the Board did not properly explain its conclusion. *Former* OAR 436-35-270(3) provided, in part:

"(a) 'Usual and customary work': as used in OAR 436-35-290 through 436-35-310 means the job held at the time of injury, or the same job for a different employer;

"(b) 'Modified work': as used in OAR 436-35-290 through 436-35-310 means some job other than the job held at the time of injury, or the job held at the time of injury with any modification of duties or the conditions under which those duties are performed."

The Board concluded:

"We have considered claimant's testimony regarding his current work activities and do not find that his current work activities constitute 'modified' work for purposes of applying the standards."

The Board's finding that claimant returned to his usual and customary work is supported by substantial evidence in the record, and the Board's explanation of its conclusion is adequate. The evidence shows that claimant returned to his job as an edgerman. He is able to operate his equipment by pushing buttons and can sit down or stand up as he needs to. The only variation in claimant's work activities since he returned is that it is occasionally necessary for him to have assistance in replacing lumber that has fallen from the conveyor belt.

◼ Claimant next argues that the Board's determination that he is entitled to only 15 percent impairment for disabling pain is not supported by substantial evidence and that the Board did not adequately explain how it reached its conclusion. The referee found:

---

refer to the Director's standards:

"In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. *Earning capacity is to be calculated using the standards specified in ORS 656.726(3)(f).*" (Emphasis supplied.)

"Claimant had [*sic*] a dull pain in his low back that radiated to his left hip all the time. If he walks or sits for too long or does strenuous bending or lifting he gets shooting pain that extends from his back to the left hip. Claimant is able to lift up to ten pounds but cannot do repeated bending or twisting. He can sit for one hour if he is able to shift around and stand for one hour if he is able to move around. He can walk, depending on the surface, up to a mile under optimal circumstances. Stair and ladder climbing causes a dull ache and then sharp pain. He cannot run and can drive up to an hour under optimal circumstances."

The Board adopted the referee's findings. It explained its conclusion that claimant was entitled to 15 percent impairment for pain:

"Disabling pain can result in loss of use of function and when it does, an impairment value may be assessed, even though the standards do not provide for a value range for impairment attributable to disabling pain. *Former* OAR 436-35-010(2) and OAR 436-35-320(1)(a); *Daniel M. Alire*, 41 Van Natta 752, 757 (1989). Since the surgery claimant is restricted to lifting no more than 10 lbs. and is limited when he bends or twists his back. (Ex. 18-4). Claimant can not do many of the personal activities he was accustomed to doing prior to the injury, such as painting his house, refinishing furniture, and playing with his grandchildren. We conclude that the Referee correctly awarded 15 percent permanent impairment for claimant's disabling pain."

That is supported by substantial evidence and is an adequate explanation.

■ Finally, claimant assigns as error the Board's conclusion that the record does not contain clear and convincing evidence that the degree of his permanent disability is more than 18 percent. A claimant is entitled to prove a greater extent of disability than was determined under the standards, if it can be established by clear and convincing evidence. ORS 656.283(7). Claimant argues that he has sustained an uncompensated loss from "his inability to perform any of the other jobs at the mill that he used to be able to do." He testified that, before his injury, he would sometimes work double shifts or other jobs in order to earn extra pay. The Board concluded:

"Claimant further contends that clear and convincing evidence exists that the degree of his permanent disability is

more than the entitlement indicated by the standards. ORS 656.283(7). After our *de novo* review of the record, we find that claimant has not established that his disability exceeds 17 percent."

That finding is supported by substantial evidence.

Affirmed.