Argued and submitted January 7, the decision of Court of Appeals reversed, order of Workers' Compensation Board vacated, and case remanded to Workers' Compensation Board for further proceedings March 25, 1993

In the Matter of the Compensation of
Donna J. England, Claimant.

Donna J. ENGLAND,
*Petitioner on Review,*

*v.*

THUNDERBIRD
and SAIF Corporation,
*Respondents on Review.*

(WCB 90-02863; CA A71117; SC S39346)

848 P2d 100

Edward J. Harri, of Malagon, Moore, Johnson, Jensen & Correll, Eugene, argued the cause and filed the petition for petitioner on review.

Steve Cotton, Special Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the response to the petition for review were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

UNIS, J.

## UNIS, J.

Claimant seeks review of a Court of Appeals decision affirming an order of the Workers' Compensation Board awarding her nine percent unscheduled permanent partial disability (PPD). *England v. Thunderbird*, 112 Or App 324, 827 P2d 208 (1992). We reverse.

Claimant was 49 years old at the time of the hearing. She had been a cocktail server for approximately 15 years. On January 17, 1985, while on the job, she escorted a patron to the lobby to wait for a taxi. The patron grabbed and twisted her head rapidly so that it was against his chest. Claimant developed soreness and general discomfort in her neck, and she received treatment from her family physician and then from other physicians by referral. Claimant was able to continue working.

Claimant applied for permanent partial disability under workers' compensation. *Former* ORS 656.214(5) (1987) provided in part:

> "In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. *Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, impairment and adaptability to perform a given job.*" (Emphasis added.)[1]

*Former* OAR 436-35-290(2)(a) provided that, "[f]or workers who have returned to their usual and customary work or

---

[1] ORS 656.214(5) was amended in 1987, Or Laws 1987, ch 884, § 36, and in 1990, Or Laws 1990, ch 2, § 7. It now provides:

"In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is to be calculated using the standards specified in ORS 656.726(3)(f) [which provides that the criteria for evaluation of disabilities shall be 'permanent impairment due to the industrial injury as modified by the factors of age, education and adaptability to perform a given job']. The number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the worker before such injury and without such disability. For the purpose of this subsection, the value of each degree of disability is $100."

accepted a work offer for usual and customary work, the factor of age shall be given no value";[2] *former* OAR 436-35-300(2)(a) was identical with respect to the factor of education;[3] and *former* OAR 436-35-310(2)(a) was identical with respect to the factor of adaptability.[4]

On January 23, 1990, a Determination Order awarded claimant nine percent unscheduled permanent partial disability. On November 30, 1990, a Workers' Compensation Board referee affirmed the Determination Order. The referee, in the "Conclusions of Law and Opinion" section of his Opinion and Order, stated that, "[b]ecause claimant has continued her usual and customary work, I do not rate the factors of age, education, and adaptability. OAR 436-35-290(2); OAR 436-35-300(2)(a); [OAR] 436-35-310(2)(a)."

Claimant sought review. On July 10, 1991, the Workers' Compensation Board affirmed the referee's order. The Order on Review adopted the referee's "Conclusions of Law and Opinion," with the following supplementation:

"Citing to *former* OAR 436-35-290(2)(a), 436-35-300(2)(a) and 436-35-310(2)(a), the Referee did not rate claimant's age, education or adaptability in determining her unscheduled permanent disability. Claimant challenges the validity of those rules, arguing that they are outside the Director's delegated authority and contrary to *former* ORS 656.726(3)(f)(A), which authorizes the Director to adopt 'standards for the evaluation of disabilities' * * *.

---

[2] OAR 436-35-290(2) now provides:

"For workers age 40 and above who do not have a physician's release to or have not returned to either their regular work or work requiring greater strength than the job at injury, the factor of age shall be given a value of +1. For all other workers, a value of 0 shall be given."

[3] OAR 436-35-300(2) now provides:

"For workers who have a physician's release to or returned either to their regular work or work requiring greater strength, the factor of education shall be given a value of 0. For all other workers, the education factor is the sum of the values obtained pursuant to the following subsections of this rule."

[4] OAR 436-35-310(2) now provides:

"For workers who at the time of determination have a physician's release to regular work, or have either returned to or have the RFC for regular work or work requiring greater strength than work performed on the date of injury, the value for factor or adaptability is 0. For all other workers, the adaptability value is calculated according to the following sections of this rule[.]"

"\* \* \* \* \*

"If we were to conclude that it is highly probable that claimant's permanent disability resulting from her compensable neck injury is greater than that indicated by application of the 'standards,' then, rather than declaring the rules invalid, we would increase her award pursuant to our authority under *former* ORS 656.295(5). *Henry L. Szweblik*, 42 Van Natta 1847 (1990). However, we are not persuaded on this record that claimant suffers greater disability than that indicated by the 'standards.' "

Claimant sought review, challenging the validity of the rules that do not rate age, education, and adaptability when claimant continues in her usual work. The Court of Appeals affirmed, citing *Harrison v. Taylor Lumber & Treating, Inc.*, 111 Or App 325, 826 P2d 75 (1992). *England v. Thunderbird, supra*, 112 Or App at 324. In *Harrison v. Taylor Lumber & Treating, Inc., supra*, 111 Or App at 328, the Court of Appeals held that the rules that do not rate age, education, and adaptability when claimant continues in her usual work were adopted under the director's statutory authority and were not inconsistent with *former* ORS 656.214, the statute defining earning capacity.

The director of the Department of Insurance and Finance has statutory authority to promulgate rules. ORS 656.726(3)(a). In some instances, those rules involve interpretation of statutory terms to assist in evaluating claims and deciding contested cases. In *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980), this court summarized the three classes of statutory terms that delegate rule-making authority to an agency, "each of which conveys a different responsibility for the agency in its initial application of the statute and for the court on review of that application." The three classes of statutory terms are:

"1.) Terms of precise meaning, whether of common or technical parlance, requiring only factfinding by the agency and judicial review for substantial evidence;

"2.) Inexact terms which require agency interpretation and judicial review for consistency with legislative policy; and

"3.) Terms of delegation which require legislative policy determination by the agency and judicial review of whether that policy is within the delegation." *Id.*

*See also Tee v. Albertsons, Inc.*, 314 Or 633, 637, 842 P2d 374 (1992) (stating classification of statutory terms).

◼    The term "earning capacity" in *former* ORS 656.214(5) is an inexact term, *i.e.*, the legislature has expressed its meaning completely, but that meaning remains to be spelled out in the agency's rule or order. An inexact term gives the agency interpretive but not legislative responsibility. *See Springfield Education Assn. v. School Dist., supra*, 290 Or at 233 (so holding for terms "employment relations" and "conditions of employment"). With respect to an inexact term, the role of the court is to determine whether the agency "erroneously interpreted a provision of law," ORS 183.482(8)(a), and the ultimate interpretive responsibility lies with the court in its role as the arbiter of questions of law. *Springfield Education Assn. v. School Dist., supra*, 290 Or at 234.

◼    The court's role in statutory interpretation is to discern and apply the legislature's intent. The best indication of legislative intent is the words of the statute themselves. *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991). In this case, the legislature has chosen to make the permanent loss of earning capacity due to a compensable injury the criterion for rating a disability. *Former* ORS 656.214(5). *Former* ORS 656.214(5) defined earning capacity as "the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, impairment and adaptability to perform a given job." Thus, the legislature chose to list the criteria for determining earning capacity and gainful employment by example, but did not use an exhaustive list of factors. The listing of representative factors was a direction to the agency that, in determining a worker's earning capacity, it consider such factors as age, education, impairment and adaptability, and other factors that affect one's earning capacity in a similar way. *See Springfield Education Assn. v. School Dist., supra*, 290 Or at 233 (reaching same conclusion with respect to a different representative list). The legislature directed that the four listed factors must be considered, while allowing that other factors having the same characteristics may be considered as well.

Further, the legislature has chosen permanent loss of *earning capacity*, rather than loss of *earnings*, as the criterion for rating of disability. The statute goes on to make explicit what the choice of that term implies — that loss of earning *capacity* extends beyond the mere ability to retain the same job or earn the same wage to the "ability to obtain and hold gainful employment in the broad field of general occupations." *Former* ORS 656.214(5). As the Court of Appeals has observed, the fact that one employer has been accommodating and the employee retains the same job or earns the same wage is "no indication that other potential employers would be as accommodating," *Howerton v. SAIF*, 70 Or App 99, 103, 688 P2d 422 (1984). That is, post-injury employment may establish *earnings*, but it does not necessarily establish earning *capacity*:

> " 'Earning capacity must be considered in connection with a [worker's] handicap in obtaining and holding gainful employment in the broad field of general industrial occupations and not just in relationship to his occupation at any given time. A [worker's] post-injury earnings is evidence which, depending upon the circumstances of an individual case, may be of great, little, or no importance in determining loss of earning capacity.' " *Smith v. SAIF*, 302 Or 396, 401-02, 730 P2d 30 (1986) (quoting *Ford v. SAIF*, 7 Or App 549, 552-53, 492 P2d 491 (1972)).

**7, 8.** Through statutory directive and historical interpretation, a person's post-injury earnings cannot solely determine the person's earning capacity. By statutory directive, age, education, impairment, adaptability to perform a given job, and factors with similar characteristics are to be considered in determining earning capacity. *Former* OAR 436-35-290(2)(a), *former* OAR 436-35-300(2)(a), and *former* OAR 436-35-310(2)(a) directed that a person's post-injury employment determined whether the key statutory factors in determining earning capacity were considered. That is contrary to the legislative intent; the interpretation is erroneous.

*Former* OAR 436-35-290(2)(a), *former* OAR 436-35-300(2)(a), and *former* OAR 436-35-310(2)(a) are invalid. Because the decision of the Workers' Compensation Board in this case assumed the validity of and relied on those rules, that decision is erroneous. The Court of Appeals ruling to the contrary also was error.

The decision of the Court of Appeals is reversed, the order of the Workers' Compensation Board is vacated, and the case is remanded to the Workers' Compensation Board for further proceedings.