Submitted In Banc July 14 on petitioner's petition for reconsideration filed
January 20, reconsideration allowed; opinion (116 Or App 427, 841 P2d 700 (1992))
vacated; reversed and remanded October 20, 1993, petition for review denied
March 8, 1994 (318 Or 459)

In the Matter of the Compensation of
Babette Stone, Claimant.

Babette STONE,
*Petitioner,*

*v.*

WHITTIER WOOD PRODUCTS
and SAIF Corporation,
*Respondents.*

(90-06254; CA A70323)

861 P2d 387

Edward J. Harri for petition.

DURHAM, J.

Deits, J., dissenting.

## DURHAM, J.

Claimant petitions for review of our opinion in *Stone v. Whittier Wood Products*, 116 Or App 427, 841 P2d 700 (1992). We treat it as a petition for reconsideration, ORAP 9.15(1), allow it, vacate our opinion and reverse.

■ We restate the pertinent facts. Claimant was discharged from her job on September 11, 1989. At that time, she was working in a light-duty job because of a February, 1989, injury at work. Employer had increased her wage from $6.97 per hour at the time of injury to $7.48 per hour at the time of her discharge. The parties dispute the reason for the discharge. Employer claims that it fired claimant because of her absenteeism and violation of a last chance agreement regarding non-use of drugs and alcohol. Claimant argues that she was fired because she has, or employer believes she has, a physical or mental impairment, in violation of ORS 659.425(1).[1] She claims that she was entitled to temporary partial disability (TPD) after the discharge because the firing was unlawful, and her earning power at the time of discharge was not equal to or greater than her earning power at the time of injury.

We sustained the Board's denial of benefits, concluding that the Board was not required to determine whether her discharge violated ORS 659.425 before deciding her eligibility for TPD. 116 Or App at 430. Claimant does not petition for reconsideration of that holding. We incorporate and adopt our discussion and holding on that issue from our earlier opinion.

We also rejected claimant's earning power argument, holding that the Board properly considered her "actual wages at the time of the termination," 116 Or App at 431, and that,

---

[1] ORS 659.425(1) provides, in part:

"For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"* * * * *

"(c) An individual is regarded as having a physical or mental impairment."

under *Safeway Stores v. Owsley*, 91 Or App 475, 756 P2d 48 (1988), she was not entitled to TPD after her termination. She seeks reconsideration of that holding, contending that, in determining her right to TPD under ORS 656.212, the Board must consider her proportionate loss of earning power at any kind of work, not her loss in actual wages from the time of injury. She also argues that the Board rule on this subject, OAR 436-60-030(2),[2] is inconsistent with ORS 656.212. We allow reconsideration to address those arguments and conclude that she is correct.

ORS 656.212 provides:

"When the disability is or becomes partial only and is temporary in character, the worker shall receive for a period not exceeding two years that proportion of the payments provided for temporary total disability which *the loss of earning power at any kind of work* bears to the *earning power* existing at the time of the occurrence of the injury." (Emphasis supplied.)

Employer contends that we should follow our ruling in *Fink v. Metropolitan Public Defender*, 67 Or App 79, 83, 676 P2d 934 (1984), that " '[e]arning power,' as used in ORS 656.212, therefore, refers to a worker's pre-injury wages."[3] Claimant contends that that ruling is inconsistent with the terms of ORS 656.212. In *Fink*, we said:

"ORS 656.212 provides:

" 'When the disability is or becomes partial only and is temporary in character, *the worker shall receive* for a period not exceeding two years *that proportion of the payments provided for temporary total disability* which [the] loss of earning power at any kind of work bears to [the] earning power existing at the time of the occurrence of the injury,' * * *.

"As the statute indicates, compensation for temporary partial disability is to be calculated on the basis of payments for temporary total disability, which are provided by ORS 656.210.

---

[2] OAR 436-60-030(2) provides, in part:

"Temporary disability payments are not due if post-injury wages are equal or are greater than the wages earned at the time of injury."

[3] The holding in *Fink v. Metropolitan Public Defender, supra,* was recited without analysis in *dictum* in *Safeway Stores v. Owsley, supra,* 91 Or App at 479.

"Because of the interrelationship of the statutes, we look to the function and purpose of ORS 656.210 for guidance in construing ORS 656.212. Under ORS 656.210, temporary total disability is computed on the basis of the claimant's actual wages at the time of the injury. ORS 656.210(1). The purpose of temporary total disability is to compensate a claimant for loss of income until the condition becomes medically stationary, not to compensate for the work-related injury and disability, which is a function of a permanent disability award. *Taylor v. SAIF*, 40 Or App 437, 440, 595 P2d 515, *rev den* 287 Or 477 (1979). Considering ORS 656.212 in the context of the statutory scheme, we conclude that it too is designed only to maintain a worker's income at or near the worker's pre-injury level of earnings. 'Earning power,' as used in ORS 656.212, therefore, refers to a worker's pre-injury wages. We construe ORS 656.212 to provide that compensation for temporary partial disability of a worker who is recovering from a compensable injury but is nonetheless capable of earning wages and is employed is to be proportionate to the decrease in the worker's actual earnings." 67 Or App at 82. (Emphasis in original.)

We interpret a statute by examining its text and context. ORS 174.010; *Porter v. Hill*, 314 Or 86, 91, 838 P2d 45 (1992). We should give effect to every word, phrase, sentence and section, if possible. *Sanders v. Oregon Pacific States Ins. Co.*, 314 Or 521, 527, 840 P2d 87 (1992).

We note that *Fink* examined the context of ORS 656.212, but did not examine its words, particularly the references to "earning power." In *Fink*, we noted that TPD is calculated as a proportion of temporary total disability (TTD), which "is computed on the basis of the claimant's actual wages at the time of injury," under ORS 656.210(1). 67 Or App at 82. We proceeded from that statement to the conclusion that TPD was "designed only to maintain a worker's income at or near the worker's pre-injury level of earnings." We did not attempt to interpret the statutory phrase "which his loss of earning power at any kind of work bears to his earning power existing at the time of the occurrence of the injury." 67 Or App at 82. The failure to consider all of the statute's words was an error, because they are the primary manifestation of the legislature's intent.

The language of ORS 656.212 demonstrates that the legislature chose to measure TPD by determining the

proportionate loss of "earning power," rather than proportionate loss of pre-injury wages. Moreover, TPD is measured by the loss of earning power "at any kind of work," not only at the job held at injury. If the legislature had intended TPD to measure only the worker's proportionate decrease in pre-injury wages, it could have said so. It did not. The worker's decrease in wages may control the TPD calculus in most cases. However, the statute protects the parties' right to prove that actual wage loss does not reflect the proportionate loss of earning power at any kind of work.

The discussion in *Fink* about ORS 656.210, which we described as the context of ORS 656.212, does not logically compel the conclusion that we drew. Under ORS 656.210, TTD is calculated as a percentage of lost wages. As we said in *Fink*:

> "The purpose of temporary total disability is to compensate a claimant for loss of income until the condition becomes medically stationary, not to compensate for the work-related injury and disability, which is a function of a permanent disability award." 67 Or App at 82.

However, in the context of TPD, the claimant is partially, not totally, disabled. The claimant is capable of earning a wage, but the extent of her disability, age, education and adaptability to perform a job may reduce or enhance the worker's earning power in any given case. The determination of the extent of a partially disabled worker's lost earning power is often a complex task. Nothing in ORS 656.212 or its context suggests that the legislature intended to avoid that task by using the amount of TTD payments under ORS 656.210 as the starting point for determining TPD. Moreover, the purpose of TPD as partial wage replacement, rather than as compensation for disability, does not relieve the Board of the duty to measure the extent of the disability by the proportionate loss of earning power at any kind of work. We now consider both the text and context of ORS 656.212 and conclude that the legislature did not intend to confine "earning power" to the wage at injury, and overrule *Fink v. Metropolitan Public Defender, supra.*

The Supreme Court's reasoning in *England v. Thunderbird*, 315 Or 633, 848 P2d 100 (1993), supports our conclusion. In *England*, the court invalidated a series of

Department of Insurance and Finance (DIF) rules relating to permanent partial disability that barred consideration of the worker's age, adaptability and education if the worker returned to work. 315 Or at 639. The applicable statute, ORS 656.214(5),[4] required the Board to rate permanent partial disability by determining the "permanent loss of earning capacity due to the compensable injury" and, in making that determination, to consider "such factors as age, education, impairment and adaptability to perform a given job." As the court explained, the administrative rules rested on the false assumption that a worker who returns to the pre-injury job and, therefore, suffers no permanent loss of *earnings*, has not lost *earning capacity*. The court rejected that assumption:

> "[L]oss of earning *capacity* extends beyond the mere ability to retain the same job or earn the same wage to the 'ability to obtain and hold gainful employment in the broad field of general occupations.' *Former* ORS 656.214(5). As the Court of Appeals has observed, the fact that one employer has been accommodating and the employee retains the same job or earns the same wage is 'no indication that other potential employers would be as accommodating.' *Howerton v. SAIF*, 70 Or App 99, 103, 688 P2d 422 (1984). That is, post-injury employment may establish *earnings*, but it does not necessarily establish earning *capacity*:

>> " ' "Earning capacity must be considered in connection with a [worker's] handicap in obtaining and holding gainful employment in the broad field of general industrial occupations and not just in relationship to his occupation at any given time. A [worker's] post-injury earnings is evidence which, depending upon the circumstances of an individual case, may be of great, little, or no importance in determining loss of earning capacity." ' *Smith v. SAIF*, 302 Or 396, 401-02, 730 P2d 30 (1986) (quoting *Ford v. SAIF*, 7 Or App 549, 552-53, 492 P2d 491 (1972)).

> "Through statutory directive and historical interpretation, a person's post-injury earnings cannot solely determine the person's earning capacity." 315 Or at 639. (Emphasis in original.)

*England v. Thunderbird* is not directly controlling here, because it construed the statute that specified the

---

[4] The statute has since been amended. Or Laws 1990, ch 2, § 7.

criteria for rating permanent, not temporary, partial disability. However, *England v. Thunderbird* is helpful, because it acknowledges the legislature's effort, which is evidenced in ORS 656.212, to require the Board to consider the worker's position in the job market, and not merely the reduction in wages, when it evaluates the loss from a partial disability. In restricting TPD, *i.e.*, the proportionate loss of earning power at any kind of work, to the actual wage loss, if any, on returning to work, our prior decision followed the same false assumption that *England v. Thunderbird* rejected in the PPD context.

 To paraphrase *Howerton v. SAIF, supra*, 70 Or App at 103, the fact that one employer has been accommodating and has allowed claimant to retain her pre-injury wage even though she is disabled from performing her pre-injury work is "no indication that other potential employers would be as accommodating." The post-injury wage is evidence that, depending on the circumstances, may be of great, little, or no importance in determining whether the worker has a diminished "earning power at any kind of work" under ORS 656.212. *See Ford v. SAIF, supra*, 7 Or App at 552. The Board should determine the proportionate diminution in "earning power at any kind of work" by evaluating all of the relevant circumstances that affect the worker's ability to earn wages. One employer's willingness to pay the pre-injury wage does not necessarily establish that the claimant has no lost earning power "at any kind of work."

Applying the correct test here could make a substantial difference to claimant. After her surgery, employer restored her to a lower-paying job but voluntarily continued her pre-injury higher wage. She correctly notes that that was the equivalent of an employer-paid TPD program. When employer terminated her after a few months, she was still disabled from performing her pre-injury job, but the Board denied claimant any amount of TPD, to which she otherwise would have been entitled for up to two years.[5] Other

---

[5] The dissent argues that our holding conflicts with *Safeway Stores v. Owsley, supra*. Claimant contends that *Owsley* should be overruled. *Owsley* disqualified a worker for temporary benefits after a termination because the firing was unrelated to the injury and the worker was earning the same or higher wages, at the time of termination, than before the injury. Because the Board must determine on remand whether the partial disability caused a proportionate loss of earning power at any

employers might not be as accommodating as her employer at the time of injury. The Board should not terminate her statutory entitlement to two years of TPD because one employer was willing to re-employ her after surgery at her former wage.

Reconsideration allowed; opinion vacated; reversed and remanded.

**DEITS, J.,** dissenting.

Claimant sought review of the Board's decision in this case arguing that our holding in *Safeway Stores v. Owsley*, 91 Or App 475, 756 P2d 48 (1988), was not applicable, because claimant's termination was unlawful. In our earlier opinion in this case, we rejected that argument and held that the Workers' Compensation Board was not the proper forum to determine the lawfulness of claimant's termination. The majority's opinion on reconsideration vacates the opinion without addressing that issue. I believe that it is necessary to our disposition of this case to decide that question. In my view, our previous analysis of that issue was correct, and I would not vacate that portion of the opinion.

The second argument made by claimant in her appeal, and the argument that she seeks our reconsideration of, is the question addressed by the majority on reconsideration. That question is whether the administrative rule, adopted by the Department of Insurance and Finance (DIF) and applied by the Board, that allows TPD to be calculated based on lost wages is consistent with ORS 656.212. The majority concludes that the agency's rule is invalid and that the board erred in applying it. I disagree.

At the outset, it is important to keep in mind that the purposes of awards of permanent and temporary disability benefits to a worker are different. Temporary disability benefits are paid for the purpose of compensating a worker for the temporary loss of income during a period of temporary disability due to an injury, while permanent disability benefits are paid to compensate a worker for the rest of the worker's life for total or partial permanent impairment resulting from

kind of work, we do not decide the applicability of *Owsley*, and do not address claimant's criticisms of it.

an injury. I believe that in its adoption of the disputed rule here, OAR 436-60-030, DIF has acted consistently with the purpose of temporary disability awards and has not violated the terms of ORS 656.212.

As the majority notes, the governing statute is ORS 656.212 which provides:

"When the disability is or becomes partial only and is temporary in character, the worker shall receive for a period not exceeding two years that proportion of the payments provided for temporary total disability which the loss of earning power at any kind of work bears to the earning power existing at the time of the occurrence of the injury."

DIF's rule adopting a formula for the calculation of TPD provides in pertinent part:

"(1) The rate of temporary partial disability compensation due a worker shall be determined by:

"(a) Subtracting the post-injury wage earnings available from any kind of work; from

"(b) the wage earnings from the employment at the time of, and giving rise to the injuries; then

"(c) dividing the difference by the wage earnings in subsection (b) to arrive at the percentage of loss of earning power; then

"(d) multiplying the current temporary total disability compensation rate by the percentage of loss of earning power.

"(2) *If the post-injury wage earnings are equal to or greater than the wage earnings at the time of injury, no temporary disability compensation is due.*" (Emphasis supplied.) OAR 436-60-030.

In two previous decisions of this court, we have considered the application of ORS 656.212 and DIF's rule in calculating a claimant's TPD award. In *Fink v. Metropolitan Public Defender*, 67 Or App 79, 676 P2d 934, *rev den* 296 Or 829 (1984), we considered a prior version of OAR 436-60-030, then codified as OAR 436-54-225. That case involved a situation where a claimant was partially disabled and was not able to work as many hours per week as before the injury. Despite working fewer hours after the injury, however, the claimant's weekly wages were higher than at the time of the injury. We

concluded that, under the applicable rule, the claimant was not entitled to TPD because her actual earnings had not been diminished:

> "We construe ORS 656.212 to provide that compensation for temporary partial disability of a worker who is recovering from a compensable injury but is nonetheless capable of earning wages and is employed is to be proportionate to the decrease in the worker's *actual earnings*.

> "*The formula established by former OAR 436-54-225, for computing loss of earning power comports with our construction of ORS 656.212*. The rule provided for an adjustment of the compensation to be paid for the difference between the wages the worker would have received for temporary total disability under ORS 656.210 [which is computed on the basis of the claimant's actual wages at the time of the injury]. If a claimant's post-injury wages exceed the claimant's pre-injury wages, the claimant suffers no loss of earning power and is not entitled to temporary partial disability benefits." (Emphasis supplied.) *Fink v. Metropolitan Public Defender, supra*, 67 Or App at 83.

*Safeway Stores v. Owsley, supra*, involved a similar issue. In that case, claimant was earning $3.67 per hour at the time that she was injured. Claimant returned to work and began receiving TPD. However, she soon received an increase in her hourly pay due to a renegotiation of the union contract. She was eventually fired for reasons unrelated to her injury. At the time that she was fired, she was earning more per week than at the time of her injury. The employer refused to continue to pay her TPD after she was fired arguing that, under OAR 436-60-030, she had not lost earnings due to her injury. In deciding *Owsley*, we cited ORS 656.212 and OAR 436-60-030 and quoted with approval from our decision in *Fink*. We then concluded:

> "Although *Fink* involved interim compensation, the same analysis is applicable here. Claimant's weekly wages were more during the period for which she seeks compensation than at the time of the injury. Therefore, she is not entitled to benefits for temporary partial disability. The Board's order determining otherwise and assessing a penalty and related attorney fees is therefore reversed, and employer's denial is reinstated.

> "We reject claimant's contention that employer was required to begin paying temporary partial disability benefits

again after she was fired. *See Noffsinger v. Yoncalla Timber Products*, 88 Or App 118, 744 P2d 295 (1987), *rev den* 305 Or 102 (1988); *Nix v. SAIF*, 80 Or App 656, 723 P2d 366, *rev den* 302 Or 156 (1986). Even assuming that claimant's termination did not preclude recovery of benefits for temporary partial disability, she would have been entitled only to the amount that she could have received on account of her disability had she not been fired. In this case, that is nothing." *Safeway Stores v. Owsley, supra* at 479-80.

The majority acknowledges that it departs from our holding in *Fink v. Metropolitan Public Defender, supra*, but asserts that its conclusion is compelled by the Supreme Court's recent decision in *England v. Thunderbird*, 315 Or 633, 848 P2d 100 (1993). I disagree. *England* involved the application of the statute governing awards of permanent disability, *former* ORS 656.214(5), and DIF's rules establishing formulas to calculate such awards. The Supreme Court concluded that DIF's rules were inconsistent with the statute. The language of the statute and rule involved here, however, are quite different than the language of the statute and rule considered in *England*. When the differing language of the statutes is considered, as well as the differing purposes of permanent and temporary disability benefits, I believe that the agency's formula for calculating TPD was not inconsistent with the statute.

The statute considered by the court in *England, former* ORS 656.214(5), provides in pertinent part:

"In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. *Earning capacity is the ability to obtain and hold gainful employment in the broad field of general occupations, taking into consideration such factors as age, education, impairment and adaptability to perform a given job.*" (Emphasis supplied.)

The rules that were challenged in *England* provided that, for workers who had returned to their usual and customary work, the factors of age, education and adaptability were not to be considered. The Supreme Court concluded that, because the statute explicitly directed the agency to consider the

factors of age, education and adaptability, DIF's rules providing that in certain circumstances these factors will not be considered were directly contrary to the statute and, therefore, invalid. Citing the specific factors included in the statute, the use of the term "earning capacity" and the definition of that term as the "ability to obtain and hold gainful employment in the broad field of general occupations," the court concluded that the legislature intended the Board to consider more than an injured person's post-injury wages in making a permanent disability award and that, accordingly, the rule was outside the agency's authority to interpret the statute.

Similarly, the question in this case is whether the agency's adoption of OAR 436-60-030, interpreting and implementing the inexact statutory terms of ORS 656.212, is consistent with the legislative intent in adopting the statute. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980). In *England,* DIF's rules clearly were inconsistent with the statutory directive to the agency. The statute explicitly directed the agency to consider particular factors in adopting the formula for calculation of permanent disability awards, and DIF's rules provided that, in certain circumstances, those factors would not be considered.

Here, by contrast, the statute does not include particular factors to be considered. The statute directs the agency to base the award on "loss of earning power at any kind of work," without further defining those terms. It is true that the statute at issue in *England,* ORS 656.214, uses the term "earning capacity" and the statute here, ORS 656.212, uses "earning power." These terms considered alone are similar. However, when the additional language included in ORS 656.214 is considered together with the differing purposes of these two statutes, I would conclude that it was within the agency's authority to decide that lost earning power may best be calculated by measuring lost wages. That is the reading of the statute that we have made in our previous decisions and, in my view, that holding is consistent with the statutory directive to the agency.

In reaching its conclusion, the majority expresses concern, relying on *Howerton v. SAIF*, 70 Or App 99, 688 P2d 422 (1984), that the fact that one employer is accommodating and continues to pay an injured worker at a higher salary

should not prevent a worker from being properly compensated for a disability. When we are dealing with an award of permanent disability, as we were in *Howerton v. SAIF, supra*, that concern makes sense. A permanent disability award is designed to compensate a worker for an injury for the rest of the worker's life. However, that concern is not so compelling when we are dealing with a temporary disability award that is designed to temporarily replace a worker's wages during the time of an injury. If the worker is being paid the same or a higher salary after an injury, the worker is not being harmed by not being paid additional temporary wage replacement.

The majority concludes its opinion by stating that:

"When employer terminated her after a few months, she was still disabled from performing her pre-injury job, but the Board denied claimant any amount of TPD, to which she otherwise would have been entitled for up to two years." 124 Or App at 124.

In making this statement, however, the majority again loses sight of our holding in *Owsley*. The majority forgets that, if claimant had not been fired, she would have continued to receive her full wages. It was not her injury that caused her to lose her entitlement to her wages, it was the fact that she was fired. I would hold that DIF's rule was within its authority to implement the statute and that the Board's application of the rule here was proper. For all of the above reasons, I respectfully dissent.

Richardson, C. J., and Warren and Edmonds, JJ., join in this dissent.