Argued April 5, modified May 26, 1971

FOSTER, *Petitioner, v.* STATE ACCIDENT
INSURANCE FUND, *Respondent.*

485 P2d 407

*Gary K. Jensen,* Eugene, argued the cause for petitioner. With him on the briefs were Dwyer & Jensen, Eugene.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the briefs were Lee Johnson, Attorney General of Oregon, and Jacob B. Tanzer, Solicitor General, Salem.

Before MCALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

HOLMAN, J.

Claimant injured his shoulder and arm while working for an employer covered by the State Accident Insurance Fund. He was awarded a scheduled disability equal to 15 per cent loss of use of an arm. Claimant asked for a hearing. The hearing officer increased the scheduled award to 25 per cent loss of use of an arm and denied a request for an additional award for unscheduled disability to the shoulder. The Workmen's Compensation Board and the circuit court both affirmed the award. Upon appeal to the Court of Appeals, that court, in addition to the scheduled disability for the loss of use of the arm, awarded an unscheduled disability for injury to the shoulder equal to 25 per cent loss of use of an arm.

Claimant filed a petition for rehearing pursuant to which the Court of Appeals modified its original opinion by awarding "30 per cent of a man (96 degrees)." The number of degrees was, in fact, equal to the degrees of disability previously awarded by the Court of Appeals, but the award was changed

from partly scheduled and partly unscheduled to an entirely unscheduled one for the injury to the shoulder. This change was based upon (1) a factual finding that claimant's arm suffered no permanent traumatic disability and that its existing disability was a referred one resulting from injury to his shoulder; and (2) the court's belief that the modification of ORS 656.214 (4) by Oregon Laws 1967, ch 529, p 1211, required only unscheduled disability to be awarded where injury to an unscheduled portion of the body resulted both in disability to that portion and in referred disability to a scheduled member. Claimant filed a petition for review with this court, which was granted.

1. The sole claim of error raised on review is that the court erred in denying claimant a scheduled award in addition to the unscheduled one he was given.

We interpret the facts as did the Court of Appeals. We believe that claimant's arm suffered no permanent injury and that the existing disability of the arm is referred from the injury to claimant's shoulder. The claim of error brings into question an issue identical with the one which was considered in *Surratt v. Gunderson Bros. Engineering Corp.*, 259 Or 65, 485 P2d 410 (1971), decided this date, and *Walker v. Compensation Department*, 248 Or 195, 432 P2d 1018 (1967). However, subsequent to the occurrence of the injuries in *Surratt* and *Walker*, the statute relating to awards for permanent partial unscheduled disability was modified. The claimant's injury in this case occurred after the effective date of the amendment. Before the amendment, the statute, ORS 656.214 (4), read as follows:

"In all other cases of injury resulting in permanent partial disability, the number of degrees of disability shall be computed by determining the

disabling effect of such injury as compared to the loss of any member named in the schedule in this section, not exceeding, however, 192 degrees."

By way of the amendment, the statute now reads:

"In all other cases of injury resulting in permanent partial disability, the number of degrees of disability shall be a maximum of 320 degrees determined by the extent of the disability compared to the workman before such injury and without such disability."

We have held, in cases where the accident occurred prior to the statutory amendment, that awards are made for disability and that a disability to a scheduled portion of the body is always treated as a scheduled disability, even when that disability is referred from an injury to an unscheduled portion. *Surratt* and *Walker*, *supra*. The question here is whether the change in the statute requires that such a referred disability be treated as if it were unscheduled.

The problem is caused by the new statutory language which requires unscheduled disability to be compared "to the workman before such injury and without such disability." Upon superficial examination, it might be concluded that, because the injury is to an unscheduled portion of the body and the disability is being compared with the ability of the entire body, the entire disability should be treated as unscheduled. It might also be concluded that comparing the arm disability with a good arm and then comparing the shoulder disability with claimant's condition before the injury, at which time he had two good arms, results in a duplication or an incongruity. However, we do not believe the foregoing to be so. Evaluating an unscheduled disability separate and apart from a scheduled disability and comparing it with an arbitrary yard-

stick composed of another part of the body for the purpose of evaluating it in terms of money has been the statutory formula for years. We see no difference here despite the fact that the arbitrary yardstick for measuring the monetary value of an unscheduled disability has been changed to include the entire body and, thus, a scheduled part of the body for which the disability has already been evaluated. The yardstick is relevant only for the purpose of reducing the extent of disability to dollars and not for the purpose of determining the extent of the disability. *See* W. C. Smith, Principles of Disability Evaluation, pp 116-17.[1]

It is clear from the legislative history that the Industrial Accident Advisory Committee, which proposed the change in ORS 656.214 (4), had in mind the raising of the maximum award possible for an unscheduled injury. This was done because there was no intermediate award between 192 degrees, an unscheduled injury equal to the loss of an arm, and total disability. The committee was seeking to minimize the number of persons claiming to be permanently and totally disabled who had unscheduled injuries more serious than the loss of an arm but who were not totally disabled. The committee wanted to prevent "mental cripples," who, because the awards for unscheduled disabilities were insufficient, were forced to claim that they were totally disabled when they

---

[1] "If, as in the Oregon jurisdiction, the unscheduled disability radical is 'an arm,' all evaluations of unscheduled partial disability made in that jurisdiction must be expressed in terms of percentage loss of function of an arm. This is merely a term chosen because it has, in that jurisdiction, a legally fixed monetary value. It does not refer to the function of either of the patient's arms. The usage would be the same if the radical were 'unspecified' or 'unscheduled,' in which instances there would be no thought of any anatomic part * * *."

were not. It is equally clear that the committee did not intend to affect scheduled awards in any manner.

We have come to the conclusion that two awards should continue to be made in the situation where an injury to an unscheduled portion of the body results in disability to both unscheduled and scheduled portions.

2. Claimants, generally, seem to be imbued with the idea that if they get both a scheduled and an unscheduled award they are, in some way, going to secure greater compensation. This is not so, because if one award for unscheduled disability were given for both the shoulder and the arm, the disability to both would have to be included. Theoretically, the claimant is in an inferior position where the total disability is divided between a scheduled and an unscheduled award, because lack of earning capacity may be taken into consideration for only that part of his disability which is unscheduled. *See Surratt, supra.*

The opinion of the Court of Appeals on rehearing states that the statute relative to unscheduled awards "* * * is apparently based on the 'whole man' concept." We are reluctant to acquiesce in this statement without qualification. If the "whole man" concept describes that category of persons who have the use of all of their faculties, we agree. However, the concept has been used to identify a policy whereby evaluation of injuries is limited to physical or medical impairment without any consideration for loss of earning capacity. *See* 2 Larson's Workmen's Compensation Law § 57.10, at 8-17. The use of the term by the Court of Appeals was unfortunate.

The Court of Appeals combined the scheduled and unscheduled disabilities of claimant and found that

he suffered 30 per cent of total physical impairment which is 96 degrees (30 per cent of 320). We have no reason to differ with their analysis of the percentage of his total disability, and we adopt it. However, as indicated, we believe that ORS 656.214 requires separate awards for scheduled and unscheduled disabilities. We find claimant suffered 25 per cent of the loss of use of his arm (48 degrees) and that his unscheduled disability to his shoulder is equal to 15 per cent of his total ability before such injury (48 degrees).

DENECKE, J., concurring in part; dissenting in part.

I concur in the opinion of Mr. Justice HOLMAN except for that part of the opinion which makes a de novo review of the evidence. I dissent from that part of the opinion for the reasons stated in the opinion I filed in *Surratt v. Gunderson Bros. Engineering Corp.*, decided this date.

BRYSON, J., joins in this opinion.

McALLISTER, J., dissenting in part.

For the reasons stated in my dissent in *Surratt v. Gunderson Bros. Engineering Corp.*, 259 Or 65, 83, 485 P2d 407, 410 (1971), decided this day, I cannot concur in the majority's statement that decreased earning capacity is a proper consideration in evaluating an unscheduled permanent partial disability.