Argued June 19, re-argued October 27, reversed November 17,
petition for rehearing denied November 30, petition for
review denied December 28, 1972

FERGUSON, *Respondent, v.* WOHL SHOE
COMPANY, *Appellant.*

502 P2d 1392

*Charles R. Holloway, III,* Portland, argued the cause for appellant. With him on the briefs were Tooze, Kerr & Peterson, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause and filed a brief amicus curiae. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Noreen K. Saltveit,* Portland, argued the cause and filed the brief for respondent.

*Raymond J. Conboy,* Portland, argued the cause and filed a brief amicus curiae. With him on the brief were Pozzi, Wilson & Atchison, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

The sole issue in this workmen's compensation appeal is the amount to be awarded to the claimant for a permanent partial unscheduled disability suffered by him due to a laminectomy and subsequent fusion of his low back. The Closing and Evaluation Division of the Workmen's Compensation Board, the hearing officer and the Workmen's Compensation Board all concurred in an award of 96 degrees. The trial judge increased the award to 192 degrees.

In *Surratt v. Gunderson Bros.,* 259 Or 65, 485 P2d 410 (1971), the Supreme Court discussed at length the basis of workmen's compensation awards. It concluded that the sole criterion for determining a scheduled disability is loss of physical function, and that the sole criterion for determining an unscheduled disability is loss of future earning capacity. In *Surratt* the court clearly pointed out that the determination of earning capacity must be made solely by attempting to ascertain what the future holds for the individual claimant, stating:

> "It can be argued that when a man of low intelligence quotient suffers a disabling injury to his back he should get no more than an intelligent man who suffers the same degree of injury, be-

cause the accident did not impair his mental ability which was the same after the accident as before. In fact, however, the intelligent man will suffer a very slight loss of earning capacity because he can be trained for a wide range of employment that does not involve heavy manual labor, whereas the less intelligent one will be reduced to applying for employment as a night watchman or for some other type of employment for which there is little need. To say that their loss of earning capacity attributable to the accident is the same would be completely incongruous. It would be contrary to Larson's admonition[①] that compensable disability is inability to perform or to obtain work suitable to the claimant's qualifications or training. Although it is certainly within the legislature's prerogative to provide that awards for permanent partial disability shall be on the basis of loss of physical function, we believe its intention to do so should be plain. We know of no statutory provision which so indicates except that which authorizes awards for permanent partial scheduled disabilities." 259 Or at 74-5.

Surratt, at age 36, underwent a low back fusion necessitated by a back injury. "The operation was only partially successful, leaving him with a pseudarthrosis, a false joint produced by an imperfect fusion of the vertebrae * * *." 259 Or at 67. Surratt remained unemployed for the period of 2½ years which intervened between his surgery and his hearing. The court noted about Surratt:

"* * * The medical testimony is unanimous to the effect that he can no longer do strenuous manual labor. This is the only kind of employment he has ever had. At the time of his injury, he was 36 years old. He has an 89 intelligence quotient. His

---

① 2 Larson, Workmen's Compensation Law, 1, 16, §§ 57.00, 57.10.

arithmetical ability is that of a third grader, and his reading ability is of sixth-grade level. He has no training or skills. He was given various tests to determine whether he was trainable in the assembly of small equipment or in the packaging of goods, neither of which required the use of substantial strength. His scores were poor, as he lacked swiftness, discernment, and the ability to follow printed plans or instructions." 259 Or at 80.

In the case at bar, the claimant Ferguson was 35 years old at the time of his surgery, a lumbosacral fusion. His surgeon testified at the hearing that the fusion had resulted in a firm union. The claimant had two years of college education and had been employed in the shoe business for some 16 years. At the time of his injury he was a shoe department manager in a Portland department store earning in the neighborhood of $8,500 to $9,000 per year. After recovering from his surgery he returned to his employment full-time, but subsequently quit because the bending and twisting involved in selling shoes bothered his back and leg. His doctor testified that he would always have some back disability, and should not do a lot of bending or heavy lifting. The doctor also testified that he thought the tension of working for a corporation exacerbated the claimant's back symptoms. Claimant testified that he was preparing himself to enter the real estate business as a salesman.

There is no doubt in our minds that an injury which is substantially physically disabling is likely to reduce the earning capacity even of a person whose mental ability, education and experience is such that many avenues of employment not involving heavy physical labor are open to him. There is no doubt that such an injury is not likely to reduce that man's earning

capacity as greatly as it would the earning capacity of a man so limited in education and mental capacity that he is not trainable for most types of employment that do not involve heavy manual labor.

The Supreme Court determined that a proper award for Surratt was 115 degrees.[2] A comparison of the range of employment open to claimant here, and the range open to Surratt, supports our conclusion that an award to the claimant Ferguson of 96 degrees, only 16 per cent less than the award to Surratt, is adequate.

For the foregoing reasons we hold that the judgment of the trial court must be reversed, and the order of the Workmen's Compensation Board be reinstated.

---

[2] Subsequent to the opinion in Surratt v. Gunderson Bros., 259 Or 65, 485 P2d 410 (1971), the Supreme Court, in Sahnow v. Firemen's Fund Ins. Co., 260 Or 564, 491 P2d 997, 999 (1971), held that "* * * [T]he scope of review in this [the Supreme] court should not be de novo * * *."