Argued January 30, reversed and remanded with
instructions February 20, 1973

RUNDELL, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND, *Respondent.*

506 P2d 532

*James B. Griswold,* Portland, argued the cause for appellant. On the briefs were James M. Pippin and Green, Richardson, Griswold & Murphy, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

This is an appeal from a judgment of the circuit court affirming the findings and award of the Workmen's Compensation Board and hearing officer. The award gave claimant 30 degrees or 20 per cent partial loss of the right leg.

On appeal claimant asserts that the circuit court erred in affirming that portion of the Board's order denying claimant an award for a claimed injury to his back and for asserted loss of earning capacity. He contends that he has sustained an impairment of his earning capacity of 28.5 per cent, and that he is entitled to a minimum award for unscheduled disability of 28.5 per cent of 320 degrees, or an additional 91 degrees.

The claimant was injured on June 4, 1968, while employed as a furniture mover and truck driver by Ralph's Transfer & Storage in The Dalles. He had worked for the same employer continuously since 1957. He originally suffered an on the job injury to his back in 1962. Claimant underwent surgery for the removal of a herniated disc, with the surgeon performing a laminectomy. He made a satisfactory recovery

and was able to return to his former employment, performing his duties "reasonably well." He was relatively symptom-free except for his left leg and foot. His claim was closed in December 1962, and he received an award of permanent partial disability equivalent to 35 per cent lost function of an arm for an unscheduled disability.

On the day of the 1968 accident claimant was unloading a refrigerator from a truck. While walking backward he stepped off the walk board and fell, the refrigerator falling on top of him. Claimant testified that he immediately felt a sharp pain which appeared to originate in the right buttock and extended downward to the top of his right foot. He went home and rested the remainder of the day. The next day he consulted an osteopathic physician who advised him to remain in bed and rest for an additional two days. Thereafter he consulted a local physician, Dr. John Campbell, who placed him in the hospital. His right leg was placed in traction for four days, and both lower extremities for three additional days.

On June 21, the claimant was referred to Dr. Paul Campbell, an orthopedic specialist in Portland. Dr. Paul Campbell concluded that claimant had sustained "an acute compression of the right fifth lumbar nerve root" and advised him to remain off work two to three months, and continue on a program of progressive rehabilitation. Claimant sought and found employment with The Port of The Dalles and commenced working there September 1, 1968, at a starting salary of $500 per month. His duties on this job did not require him to lift heavy objects. However, he testified that periodically he experienced severe pain

in his lower back and right leg while working at his new job; that at times he had to lie down flat on his back to get relief. This was verified by the Manager of The Port of The Dalles, his foreman.

Claimant returned to see Dr. Paul Campbell on October 19 and December 14, 1968, and again on April 26, 1969. Each time he was advised to continue his "conservative treatment" program and exercises.

On April 1, 1970, Dr. Nathan Shlim, medical examiner for respondent, examined claimant, who again complained of back discomfort with pain in his right leg. Dr. Shlim concluded that claimant's condition was stationary, and recommended that the claim be closed. The claim was closed April 14, 1970, with an award to claimant of permanent partial disability of 15 degrees for partial loss of use of his right leg.

Following the determination order claimant requested a hearing. After the hearing claimant returned to Dr. Paul Campbell on November 30, 1970, for a further examination. Claimant informed Dr. Campbell that he was still experiencing pain with heavy activities. Dr. Campbell gave his opinion that claimant's "present physical disability due to the disease process in his lumbosacral spine is equivalent to a 50 per cent loss of function of an upper extremity as compared with a workman without such a disability."

On April 27, 1971, the hearing officer entered his opinion and order increasing the award of permanent partial disability to the right leg to 30 degrees but denying the claim for unscheduled disability to the back. The Board affirmed the hearing officer in its order of August 17, 1971, which order was in turn affirmed by the circuit court.

■ It appears from a review of the evidence and

the report of Dr. Paul Campbell that the source of claimant's right leg difficulty and pain was actually the injury to his spine, viz., an acute compression of the right fifth lumbar nerve root. It further appears that claimant's physical disability was aggravated by "the disease process in his lumbosacral spine [and] is equivalent to a 50 per cent loss of function of an upper extremity * * *," as stated by Dr. Campbell following his November 30, 1970, examination of claimant. From this we conclude that the hearing officer should have given claimant an award for an unscheduled disability to his back in addition to partial disability to the right leg. *See, Foster v. S.A.I.F.*, 259 Or 86, 485 P2d 407 (1971). This being the case claimant was entitled to be compensated for an unscheduled disability to his back on the basis of loss of earning capacity. *Surratt v. Gunderson Bros.*, 259 Or 65, 485 P2d 410 (1971). *See also, Ferguson v. Wohl Shoe Co.*, 11 Or App 407, 502 P2d 1392, Sup Ct *review denied* (1972).

Respondent contends that claimant sustained no unscheduled back injury as a result of his accident of June 4, 1968. To support its contention respondent cites and compares two medical reports, the first being submitted by Dr. Lindquist following claimant's laminectomy in 1962, and the second, Dr. Paul Campbell's report subsequent to claimant's 1968 injury. Respondent contends that by comparing the two reports it "demonstrates that there is no additional unscheduled or back disability resulting from this injury." This contention overlooks the conclusion of Dr. Campbell that claimant's condition was equivalent to 50 per cent loss of function of an upper extremity, and his advice to claimant to change jobs and seek lighter work. In addition we have the physical facts,

including the evidence concerning claimant's inability to lift heavy objects following the 1968 injury, and that at times while on the new job he had to lie down flat on his back to get relief from the severe pain he was experiencing following exertion.

After reviewing the entire record it is our conclusion that the circuit court erred in its finding that claimant had not sustained an unscheduled injury to his lower back as a result of the 1968 accident.

Following claimant's first injury to his back in 1962 he was able to return to his same job and perform the same work without noticeable impairment. However, following the 1968 injury to his back he was unable to do so. Dr. Paul Campbell advised him not to go back to work until his condition improved, and then only to perform lighter work.

The evidence established that claimant had to take a lower-paying job because of his inability to lift heavy objects and perform strenuous tasks. Even then he experienced severe back pain from time to time and had to stop work and lie prone to get relief from the pain.

While it may be true, as urged by respondent that the 1962 accident may have also contributed to claimant's present disability, nevertheless, we note that despite the earlier. accident he had returned to the same job and performed all tasks incident to it until the 1968 accident.

We are of the opinion that the award made by the hearing officer and affirmed by the Board and the circuit court was insufficient to compensate the claimant for his disability.

■ The sole criterion for determining an unscheduled disability is loss of future earning capacity. *Surratt v. Gunderson Bros.,* supra.

The evidence was that claimant's earnings fell from $8,561.73 in 1967 to $6,600 in 1969, and $6,900 in 1970; that after more than two years on the new job he was still earning approximately $1,500 less than he made in the last full year with his old employer. We also note that at the time of the hearing claimant and his wife were employed as caretakers at a motel. They received $150 a month plus an apartment rent-free for their services. It was stipulated that the reasonable value of claimant's part-time services at the motel was $50 a month.

■ In determining the future earning capacity of an injured workman we must bear in mind that present earnings are relevant but not conclusive evidence of future earning capacity. As we pointed out in *Ford v. SAIF,* 7 Or App 549, 492 P2d 491 (1972):

> "* * * [A] person with almost total physical disability may find a post-injury occupation not involving physical effort which pays him substantially more than his pre-injury occupation—yet such a man is severely disabled in terms of ability to obtain and hold gainful employment in the broad field of general industrial occupations. * * *" 7 Or App at 552-53.

4. Taking into account all factors,[1] including the 1962 award of 35 per cent lost function of an arm (under the former law), and the 1971 award of 30

---

[1] The record reflects that claimant was 38 years old, married, and had two minor children; that he had only a ninth grade education; and that all of his prior work experience shown in the record involved physical labor only.

degrees for the right leg as required by ORS 656.222, we find that an additional award of 42 degrees for permanent partial unscheduled disability is proper in this case.

Reversed and remanded with instructions to enter a judgment consistent with this opinion.