Argued and submitted January 12, reversed and remanded for reconsideration
April 20, petition for review denied June 21, 1994 (319 Or 273)

In the Matter of the Compensation of
Jay A. Nero, Claimant.

Jay A. NERO,
*Petitioner,*

*v.*

CITY OF TUALATIN,
*Respondent.*

(92-04986; CA A80583)

873 P2d 390

Daniel J. DeNorch argued the cause for petitioner. On the brief was Michael R. Dehner.

Patric J. Doherty argued the cause for respondent. With him on the brief were Karli L. Olson and VavRosky, MacColl, Olson, Doherty & Miller, P.C.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

■    Claimant seeks review from an order of the Workers' Compensation Board. He assigns error to the Board's decision not to award a penalty under ORS 656.268(4)(g), which provides:

> "If, upon reconsideration of a claim closed by an insurer or self-insured employer, the department orders an increase by 25 percent or more of the amount of compensation to be paid to the worker for permanent disability and the worker is found upon reconsideration to be at least 20 percent permanently disabled, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant."

We reverse.

Claimant suffered a work related injury in March, 1991, that affected his lower back and right leg. In November, 1991, employer issued a Notice of Closure that found no permanent disability. ORS 656.268(4)(a).[1] Claimant requested reconsideration by the Department of Insurance and Finance (DIF), ORS 656.268(4)(e),[2] and sought a penalty pursuant to ORS 656.268(4)(g). The order on reconsideration granted claimant an unscheduled award of 12 percent, which was equivalent to a 38.40-degree loss for his back, and a scheduled award of 11 percent, which was equivalent to a 16.50-degree loss for his right leg. The order on reconsideration did not award a penalty.

---

[1] In 1991 ORS 656.268(4)(a) provided:

"When the worker's condition resulting from an accepted disabling injury has become medically stationary, and the worker has returned to work or the worker's attending physician releases the worker to return to regular or modified employment, the claim may be closed by the insurer or self-insured employer, without the issuance of a determination order by the Department of Insurance and Finance."

In 1993, the legislature changed the name of DIF to the Department of Consumer and Business Services. Or Laws 1993, ch 744, § 18.

[2] ORS 656.268(4)(e) provides:

"If the worker objects to the notice of closure, the worker first must request reconsideration by the department under this section."

Subsequently, employer requested a hearing. ORS 656.268(6)(b).[3] At that hearing, claimant renewed his request for a penalty under ORS 656.268(4)(g).[4] The referee reduced claimant's unscheduled award to 5 percent and eliminated the scheduled award. On review, the Board reinstated the award provided for in DIF's order. It, too, denied claimant's request for a penalty. It noted that, although the separate awards are less than 20 percent each, together they are equivalent to 23 percent permanent disability. It then framed the issue as whether the scheduled and unscheduled awards could be combined in order to achieve the 20 percent permanent disability requirement for a penalty under ORS 656.268(4)(g).

The Board concluded that ORS 656.268(4)(g) is ambiguous. It said:

"We do not find that the statute clearly and unambiguously resolves the question, since it does not address the situation where 20 percent permanent disability may be achieved by a combination of scheduled and unscheduled awards."

When the legislative history proved unhelpful, the Board looked to the director's rules concerning the reconsideration process. Ultimately, it relied on OAR 436-30-050(13), which provides that, for the purpose of assessing a penalty under ORS 656.268(4)(g),

"a worker who receives a total sum of 64 degrees of scheduled and/or unscheduled disability shall be found to be at least 20% disabled."

Although the Board acknowledged that there could be circumstances in which the director's rule could be inconsistent with the statute, the Board used it as a basis for its analysis in

---

[3] ORS 656.268(6)(b) provides, in part:

"If any party objects to the reconsideration order, the party may request a hearing under ORS 656.283 within 180 days after copies of notice of closure or the determination order are mailed, whichever is applicable."

[4] The parties do not address, and we express no opinion about whether a claimant who has not objected to the order on reconsideration by requesting a hearing under ORS 656.268(6)(b) can, during the hearing requested by the employer, raise the issue of an ORS 656.268(4)(g) penalty that was not awarded in the order on reconsideration.

this case.[5] It then concluded that, because the sum of claimant's scheduled and unscheduled disability was 54.9 degrees, he was not entitled to a penalty.

We review the Board's order on review to determine whether it correctly interpreted the statute. ORS 656.298; ORS 183.482(8)(a); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 608, 859 P2d 1143 (1993). In *PGE v. Bureau of Labor and Industries, supra,* the court provided an analytical framework for interpreting a statute. In determining the intent of the legislature, we are to examine both the text and context of the statute. The court went on to say:

> "In this first level of analysis, the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent. In trying to ascertain the meaning of a statutory provision, and thereby to inform the court's inquiry into legislative intent, the court considers rules of construction of the statutory text that bear directly on how to read the text. Some of those rules are mandated by statute, including, for example, the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' ORS 174.010. Others are found in the case law, including, for example, the rule that words of common usage typically should be given their plain, natural, and ordinary meaning." 317 Or at 610. (Citations omitted.)

The parties agree that DIF's order increased by 25 percent or more the amount of compensation for permanent disability. Claimant asserts that the language of the statute "indisputably covers situations [when] more than one award combines to meet the requirement of 20 percent disability, or [when] scheduled and unscheduled awards combine to meet the requirement of 20 percent disability" and argues that there is no "hint of ambiguity" in the statute. Employer argues that the statute is ambiguous because it "does not address the situation [of when the] 20 percent permanent disability may be achieved by a combination of scheduled and unscheduled awards."

■ We perceive no ambiguity in the language of ORS 656.268(4)(g). ORS 656.005(6) defines a claim as a written

---

[5] Neither party challenges the validity of OAR 436-30-050(13), and we do not decide that question.

request for compensation. Under ORS 656.005(8), "compensation" includes all benefits for a compensable injury. A "compensable injury" is an injury arising out of and in the course of employment requiring medical services or resulting in disability or death. ORS 656.005(7). ORS 656.268(4)(g) unambiguously refers to a "claim" and to "compensation" and does not qualify those words in any respect. Therefore, they must be given their complete meaning within the context of the Workers' Compensation Act. That means the word "compensation" in ORS 656.268(4)(g) necessarily entails all of the compensation awarded as part of a claim. That construction is supported by the rest of the statute, which mandates that the amount of the penalty be based on "all compensation determined to be then due to claimant." In this case, the compensation awarded for the claim was for both scheduled and unscheduled disability. Thus, when the legislature said that "the worker is found upon reconsideration to be at least 20 percent permanently disabled," it intended to refer to the entire claim, including combined awards for scheduled and unscheduled disability.

Reversed and remanded for reconsideration.