Argued and submitted December 23, 1994; resubmitted In Banc June 8, reversed and remanded for reconsideration June 21, petition for review denied September 5, 1995

(321 Or 560)

In the Matter of the Compensation of
Steven L. Cline, Claimant.

## SAIF CORPORATION
and Weaver Construction Co.,
*Petitioners,*

*v.*

Steven L. CLINE,
*Respondent.*

(WCB 93-00701; CA A83804)

897 P2d 1172

Michael O. Whitty, Special Assistant Attorney General, argued the cause for petitioners. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

James L. Edmunson argued the cause for respondent. With him on the brief was Malagon, Moore, Johnson & Jensen.

LANDAU, J.

## LANDAU, J.

Employer seeks review of an order of the Workers' Compensation Board that awarded claimant a penalty under ORS 656.268(4)(g). We reverse and remand for reconsideration.

Claimant suffered a compensable injury to his thumb. When that condition became medically stationary, employer issued a notice of closure, awarding 23 percent permanent scheduled disability for the thumb. Claimant requested reconsideration. He was examined by a medical arbiter. As a result of that examination, his award was increased to 42 percent permanent scheduled disability for the thumb and 6 percent for the hand.

Claimant requested a hearing, arguing that he was entitled to a penalty under ORS 656.268(4)(g), because his compensation had been increased by more than 25 percent, and he had been determined to be at least 20 percent disabled. Employer argued that a penalty was not appropriate, because, among other things, claimant had not been determined to be at least 20 percent disabled. According to employer, ORS 656.268(4)(g) permits an award of penalties only if the entire worker, not a body part, has been determined to be at least 20 percent disabled. Employer argued that OAR 436-30-050(13) provides a methodology for converting percentages of disability for body parts to percentages of disability of the whole worker, and that, under that rule, claimant is less than 20 percent disabled.

The Board refused to apply OAR 436-30-050(13) and awarded the penalty. It concluded that the statute does not require conversion of percentages of disability for body parts to percentages of disability for the whole worker. Employer seeks review, arguing that the Board erred in failing to apply OAR 436-30-050(13).[1] Claimant responds that we rejected

---

[1] Employer also argues that the Board erred in imposing the penalty without some showing of wrongdoing or unreasonable conduct. We recently rejected that argument in *SAIF v. St. Clair*, 134 Or App 316, 894 P2d 1264 (1995).

We also do not address whether a penalty under ORS 656.268(4)(g) may be assessed in the first instance by the Board, rather than by the department on reconsideration. That issue has not been raised.

the same arguments in *Nero v. City of Tualatin*, 127 Or App 458, 873 P2d 390 (1994).

ORS 656.268(4)(g) provides:

> "If, upon reconsideration of a claim closed by an insurer or self-insured employer, the department orders an increase by 25 percent or more of the amount of compensation to be paid to the worker for permanent disability and the worker is found upon reconsideration to be at least 20 percent permanently disabled, a penalty shall be assessed against the insurer or self-insured employer and paid to the worker in an amount equal to 25 percent of all compensation determined to be then due the claimant."

To administer that statutory provision, the Department of Consumer and Business Services (the department) promulgated a series of regulations that require a percentage of unscheduled disability or a percentage of scheduled disability for a particular body part to be converted to "degrees," with 320 degrees comprising a whole worker. *See generally* OAR 436-35-001 *et seq.* OAR 436-30-050(13) then provides:

> "[A] worker who receives a total sum of 64 degrees of scheduled and/or unscheduled disability shall be found to be at least 20 percent disabled."

The issue in this case is the validity and applicability of OAR 436-30-050(13).

■■     Our review of the validity of an agency rule depends on the type of statutory term construed by the rule. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980). In this case, the statutory reference to "the worker" being found "at least 20 percent permanently disabled," is an inexact term, because the legislature has expressed itself completely, but the meaning of its enactment is subject to agency interpretation. *Id.* at 224-28. Accordingly, our task is to determine whether the agency has erroneously interpreted the law. *England v. Thunderbird*, 315 Or 633, 638, 848 P2d 100 (1993).

■     We begin with the text and context of the statute, which include provisions concerning the same or related matters. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993). The text of ORS 656.268(4)(g) refers to the disability of "the worker," not a particular body

part. That strongly suggests that the percentage of disability should be construed accordingly, and that the percentage of disability of a particular body part must be converted to a percentage of the whole worker before the statute may apply.

That construction is borne out by the statutory context. The extent of disability is determined first by whether the worker's disability is scheduled or unscheduled. Scheduled disabilities are those involving the loss of use or function of any of a series of organs or body parts specifically enumerated by statute. ORS 656.214(2) through (4). If the worker suffers an injury to one of those organs or body parts, the worker is awarded a certain amount of money for each "degree" of disability, with 320 degrees comprising the whole worker. ORS 656.214(5). For example, the fourth finger is assigned six degrees of disability. If a worker loses 50 percent of the use or function of a fourth finger, the worker has suffered three degrees of disability. ORS 656.214(2)(k). It is important to note that the "percentage" reference only describes the extent of loss of use of the limb, not the disability of the whole worker. The statute uses "degrees" as the unit of measurement of the disability of the whole worker.

If the disability is not expressly scheduled in ORS 656.214(2) through (4), the disability is unscheduled. Disabilities resulting from injuries to the head, back or neck, for example, are unscheduled. A worker receives a specified sum of money depending on the worker's degrees of unscheduled disability, based on the percentage of loss of earning capacity due to the compensable injury. ORS 656.214(5). Thus, a worker who suffers a back injury that causes a loss in earning capacity of 50 percent has suffered 160 degrees of disability, once again with 320 degrees comprising the whole worker. ORS 656.214(5).

The statutory use of the degrees of disability, therefore, provides the common unit of measurement, and a worker with at least 20 percent permanent disability is one who has suffered 64 degrees of disability. That is, in fact, the way the Supreme Court has applied the statutes. In *Foster v. SAIF*, 259 Or 86, 91-92, 485 P2d 407 (1971), for example, the court combined percentages of scheduled and unscheduled disabilities by translating them both into their common unit of measurement, degrees, and then adding the degrees to

arrive at a total disability figure. Similarly, in *Olds v. Superior Fast Freight*, 36 Or App 673, 677, 585 P2d 709 (1978), we did the same thing. Although the statutes have been amended since both decisions were issued, those amendments have not affected the language at issue and, therefore, remain illustrative of the proper manner in which to read the law.

In short, the statutes define a worker in terms of 320 degrees, and further define disability of the worker in terms of a percentage of those degrees. Accordingly, when a worker suffers an impairment of a particular body part, to determine the extent of disability to the whole worker, the disability must be translated into the statutory unit of measurement: the degree. That is precisely what the department's rules accomplish. They convert various percentages of disability for various body parts into degrees of the whole worker. Then, if the worker is determined to have suffered 64 degrees of permanent disability, the worker is considered to be at least 20 percent disabled within the meaning of the statute. OAR 436-30-050(13).

■ That the department's rules constitute the only reasonable construction of the statute is further borne out by the consequences of a contrary construction. Assuming for the sake of argument that claimant is correct, a worker who has suffered the entire loss of a little finger is 100 percent permanently disabled within the meaning of the statute, although the loss of that finger results in less than two percent disability of the worker. ORS 656.214(2)(k). Moreover, if claimant is correct that percentages of disability need not be translated to degrees of a whole worker, then percentages of scheduled and unscheduled disability could be directly added together. Thus, if a worker suffered a 10 percent scheduled disability of a forearm and a 10 percent unscheduled disability of the lower back, the worker would be considered 20 percent disabled for the purposes of ORS 656.268(4)(g), even though, as a review of the law makes clear, that would be akin to saying the sum of two inches and two feet is four feet.

We are aware of the fact that our decision in *Nero* may be read to support claimant's arguments. In that case, the Board determined that the claimant had suffered an 11 percent loss of a scheduled body part and a 12 percent unscheduled loss. Because the two losses translated to a sum

of only 55 degrees of disability, the Board concluded that the claimant was not entitled to a penalty under ORS 656.268-(4)(g). We reversed. It bears noting that the parties in that case did not challenge the validity of OAR 436-30-050(13), and we expressly declined to rule on that issue. Moreover, the only issue that the parties did raise was whether it was proper to combine awards for scheduled and unscheduled disability in determining whether the worker is at least 20 percent permanently disabled. We held that it is proper to do that, and our decision today is consistent with that construction of the law. Nevertheless, we did reverse the Board in *Nero*. That result cannot be squared with our opinion today and, in that respect, *Nero* should be regarded as overruled.

We conclude that OAR 436-30-050(13) is valid and that the Board erred in declining to apply it in this case.

Reversed and remanded for reconsideration.