Argued and submitted January 9, affirmed December 24, 1997

In the Matter of the Compensation of
Gregory D. Schultz, Claimant.

Gregory D. SCHULTZ,
*Petitioner,*

*v.*

SPRINGFIELD FOREST PRODUCTS
and SAIF Corporation,
*Respondents.*

(WCB 94-07903; CA A91008)

951 P2d 169

Dale C. Johnson argued the cause for petitioner. With him on the brief was Malagon, Moore, Johnson & Jensen.

Steven R. Cotton argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Claimant seeks review of an order of the Workers' Compensation Board modifying an order of the administrative law judge (ALJ) increasing claimant's unscheduled permanent partial disability (PPD) award. The issues are whether the Board or the ALJ may invalidate a rule of the director of the Department of Consumer and Business Services , and, if so, whether OAR 436-35-320(5) is a valid exercise of the director's rule-making authority. We affirm.

The facts are undisputed. Claimant was injured when he fell from a ladder while working for employer as a veneer dryer feeder. As a result of the fall, claimant sustained a compression fracture of his L-1 vertebra and an injury to his left elbow.

Claimant filed a claim and sought permanent partial disability. ORS 656.214(5) provides, in part:

"In all cases of injury resulting in permanent partial disability, other than those described in subsections (2) to (4) of this section, the criteria for rating of disability shall be the permanent loss of earning capacity due to the compensable injury. Earning capacity is to be calculated using the standards specified in ORS 656.726(3)(f)."

ORS 656.726(3)(f)(A) provides:

"The criteria for evaluation of disabilities under ORS 656.214(5) shall be permanent impairment due to the industrial injury as modified by the factors of age, education and adaptability to perform a given job."

OAR 436-35-320(5)(a) provides:

"Unscheduled chronic condition impairment is considered after all other unscheduled impairment within a body area, if any, has been rated and combined under these rules. Where the total unscheduled impairment within a body area is equal to or in excess of 5%, the worker is not entitled to any unscheduled chronic condition impairment."

On December 17, 1993, SAIF issued a notice of closure, awarding claimant 29 percent scheduled PPD for his left elbow and 20 percent unscheduled PPD for his low back

injury. The Appellate Review Unit of the Department of Consumer and Business Services affirmed the notice of closure by an order on reconsideration dated July 10, 1994. Claimant sought a hearing.

After the hearing, the ALJ increased claimant's unscheduled PPD award for his low back injury to 32 percent, which included a five percent award for a chronic condition. The ALJ acknowledged that OAR 436-35-320(5)(a) prevented an award of impairment for a chronic condition because claimant's total unscheduled impairment award for his low back was greater than five percent, but she concluded that the rule was invalid and declined to apply it. She explained:

> "The total disregard of acknowledged impairment in some circumstances pertaining to unscheduled PPD, unlike full recognition of scheduled impairment, is arbitrary and inconsistent with the statutory directives regarding the standards. Consequently, the Director exceeded his authority in the promulgation of such a discriminatory rule."

■ SAIF sought review by the Board, which modified the ALJ's order and reduced claimant's unscheduled PPD award to 22 percent. It followed OAR 436-35-320(5)(a) and excluded the unscheduled chronic condition award from the total award. It did so for two reasons. First, it held that neither the ALJ nor the Board had authority to invalidate the director's rule; second, and in the alternative, it reasoned that OAR 436-35-320(5)(a) did not exceed the director's statutory authority to promulgate disability standards. We conclude that the Board does have the authority to review the validity of a director's rule to determine if it is consistent with applicable statutes and we hold that the Board was correct in determining that the director's rule is consistent with the statute.

■ The Supreme Court held in *Nutbrown v. Munn*, 311 Or 328, 346, 811 P2d 131 (1991), *cert den* 502 US 1030 (1992), that "[a]lthough it is an authority to be exercised infrequently, and always with care, Oregon administrative agencies have the power to declare statutes and rules unconstitutional." While the issue here is not a constitutional question, the reason for the court's holding in *Nutbrown* applies equally in this context. Administrative agencies, including those with quasi-judicial power, are required to follow the

law. If the agency concludes that an administrative rule that it must apply is not in accordance with a statute or is unconstitutional it must follow the superior rather than the subordinate law. It would be an unnecessary limitation of the agency's role for it blindly to apply a rule that is inconsistent with a statute or constitutional provision. *See Hadley v. Cody Hindman Logging,* 144 Or App 157, 160, 925 P2d 158 (1996) (so long as the director prescribed a method that is within the delegation by the legislature, neither we nor the Board may substitute our own judgment regarding the method of computation); *cf. Shubert v. Blue Chips,* 151 Or App 710, 951 P2d 172 (1997) (the Board may not substitute its judgment for that of the director of the Department of Consumer and Business Services regarding temporary disability standards) (emphasis supplied). Additionally, "[i]t would be pointless to reverse an agency for correctly deciding a legal question on the ground that the agency should have waited for the reviewing court to decide the question." *Cooper v. Eugene School Dist. No. 4J,* 301 Or 358, 364, 723 P2d 298 (1986), *appeal dismissed* 480 US 942 (1987).

■    The question then is whether OAR 436-35-320(5)(a) is consistent with the applicable statutes. The legislature provided that for unscheduled PPD "the criteria for rating * * * shall be the permanent loss of *earning capacity* due to the compensable injury." ORS 656.214(5) (emphasis supplied). Earning capacity is an inexact term because the legislature has expressed its meaning completely, but that meaning remains to be spelled out in the agency's rule or order. *England v. Thunderbird,* 315 Or 633, 638, 848 P2d 100 (1993). The role of the court, with respect to inexact terms, is to determine whether the agency interpreted a provision of law in a way that is consistent with legislative policy. ORS 183.482(8)(a); *England,* 315 Or at 637. Accordingly, we review the validity of OAR 436-35-320(5)(a) for consistency with the relevant provisions of the workers' compensation statutes. *See SAIF v. Cline,* 135 Or App 155, 158, 897 P2d 1172, *rev den* 321 Or 560 (1995).

Claimant contends that it is inconsistent with the statutes for the director to treat unscheduled chronic conditions differently from scheduled chronic conditions.[1] This

---

[1] Scheduled chronic condition awards are not restricted to instances when total impairment is less than five percent. OAR 436-35-010(6)(a).

echoes the reasoning of the ALJ, who found that it "is arbitrary and inconsistent with the statutory directives regarding the standards." That is not correct.

Scheduled impairment "means a compensable permanent *loss of use or function* which results from injuries to those body parts listed in ORS 656.214(2) through (4)." OAR 436-35-005(12). Only the "loss of physical function is to be considered in determining the amount of compensation" in scheduled injuries. *Powell v. Wilson*, 10 Or App 613, 616, 501 P2d 338 (1972). The amount awarded is set without consideration of any other factors. Thus, there is no chance that other factors that have already been considered will be taken into account in evaluating "loss of physical function."

In contrast, unscheduled impairments "means the permanent loss of earning capacity due to a compensable condition." OAR 436-35-005(16). Earning capacity is measured by taking the permanent loss of use or function of a body part and modifying it by the factors of age, education and adaptability. OAR 436-035-320(2); ORS 656.726(3)(f)(A). It is the inclusion of those additional factors that distinguishes the treatment of unscheduled impairments from scheduled impairments.

Specifically, when evaluating adaptability, restrictions are taken into account. Restrictions are permanent physical limitations that restrict repetitive motions. *See* OAR 436-35-310(3)(l). A chronic condition, by definition, is the inability to use a body part repetitively. OAR 436-35-320(5). If a claimant were awarded recovery for "restrictions" under adaptability and independently for impairment caused by a chronic condition impairment, the claimant would receive a double award for the same component of the condition.

However, if a claimant's total impairment is between one and four percent, adaptability is not considered.[2] OAR 436-35-310(8). Thus, when adaptability is not factored into the equation, a claimant may be awarded a chronic condition award of five percent. OAR 436-35-320(5). The

---

[2] Presumably, the director concluded that if total impairment is less than four percent, a worker would be adaptable to any job. Thus, adaptability would not be an appropriate consideration.

result is that a chronic condition ultimately is compensated. It is recoverable as a "restriction" when adaptability is considered, or as a chronic condition award when adaptability is not considered. That prevents a double recovery.

■ ■ Claimant also asserts that, according to ORS 656.726(3)(f)(A), all injury-related impairments, including chronic conditions, must be rated before the rating may be "modified." We agree with the Board that the phrase "permanent impairment due to the industrial injury as modified by the factors of age, education and adaptability" must be viewed as a whole in determining loss of earning capacity. Viewing it otherwise would mean that the legislature intended double recovery in some instances. That would not be consistent with legislative policy. Thus, we hold that the Board was correct in concluding that OAR 436-35-320(5) did not violate the statute.

Affirmed.